GARY E. KLAUSNER (STATE BAR NO. 69077)
EVE H. KARASIK (STATE BAR NO. 155356)
GREGORY K. JONES (STATE BAR NO. 181072)
STUTMAN, TREISTER & GLATT
PROFESSIONAL CORPORATION
1901 Avenue of the Stars
12th Floor
Los Angeles, CA 90067
Telephone:  (310) 228-5600
Telecopy:  (310) 228-5788

Reorganization Counsel for
Debtor and Debtor in Possession

Debtor's Mailing Address:
888 Prospect Street, Suite 300
La Jolla, CA 92037

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 09-19431-LA11 |
| IMPERIAL CAPITAL BANCORP, INC., | Chapter 11 |
| Debtor. | |
| | **DISCLOSURE STATEMENT RE CHAPTER 11 LIQUIDATING PLAN OF REORGANIZATION FOR DEBTOR IMPERIAL CAPITAL BANCORP, INC., A DELAWARE CORPORATION DATED OCTOBER 4, 2010** |
| Tax Identification Number: | |
| 95-4596322 | |
| | **Disclosure Statement Hearing** |
| | [To be Scheduled] |
| | **Confirmation Hearing** |
| | [To be Scheduled] |

544066v.4

# TABLE OF CONTENTS

Page(s)

I.   INTRODUCTION ............................................................................................... 1

    A.   Summary of Classification and Treatment ................................................. 3

    B.   Summary of Voting On The Plan ................................................................ 5

II.  HISTORY OF THE DEBTOR ........................................................................... 7

    A.   The Debtor's Business ................................................................................ 7

    B.   Events Leading Up To Chapter 11 Filing .................................................. 7

III. EVENTS DURING CHAPTER 11 CASE ......................................................... 8

    A.   FDIC Seizure Of The Debtor's Books And Records ................................. 8

    B.   Recovery Of Assets In The Debtor's Case ................................................ 9

        1.   Recovery of Tax Refunds ................................................................. 9

        2.   Rabbi Trust Complaint .................................................................... 11

        3.   Tax NOLs ........................................................................................ 12

        4.   Liquidation Of Personal Property .................................................. 12

    C.   Proofs Of Claim Filed In The Debtor's Case ........................................... 13

        1.   Proof Of Claim Filed By The FDIC ............................................... 13

        2.   General Unsecured Claims .............................................................. 14

    D.   The Debtor's Claim In The Bank's Receivership Estate ........................... 14

    E.   General Pleadings Filed In Debtor's Case ................................................ 15

        1.   First Day Motions ........................................................................... 15

        2.   Schedules And Statement Of Financial Affairs .............................. 15

        3.   Modification Of Lease ..................................................................... 15

        4.   Interim Compensation For Professionals And Insider
             Compensation ................................................................................. 16

        5.   Motion To Limit Trading Of Common Stock ................................. 16

F.   Appointment Of Committee ...................................................................... 17

G.   Retention Of Professionals. ...................................................................... 17

H.   Officers and Members of the Board of Directors ...................................... 18

I.   Current Value of Debtor's Assets ............................................................. 18

   1.   Cash on Hand ................................................................................. 18

   2.   Tax Refunds ................................................................................... 18

   3.   Other Assets ................................................................................... 18

IV.   SUMMARY OF THE PLAN OF REORGANIZATION ........................................ 19

A.   Summary Of Classification Of Treatment Of Claims And Interests Under
     The Plan. .................................................................................................. 20

   1.   Unclassified Claims. ....................................................................... 20

      a.   Administrative Claims. ....................................................... 20

         i.   Treatment. ............................................................... 20

         ii.   Deadlines.................................................................. 22

      b.   Priority Tax Claims............................................................. 23

   2.   Classification and Treatment of Claims.......................................... 23

      a.   Classes Of Claims And Interests........................................ 23

         i.   Class 1 (Secured Claims) ........................................ 23

         ii.   Class 2 (Priority Claims).......................................... 24

         iii.   Class 3 (General Unsecured Claims) ....................... 24

         iv.   Class 4 (Convenience Claims) ................................. 26

         v.   Class 5 (Holders of Interests In the Debtor) ........... 26

B.   Executory Contracts And Unexpired Leases. ............................................ 26

C.   Implementation Of The Plan..................................................................... 27

   1.   Distributions and Actions on the Effective Date. ........................... 27

   2.   Liquidation of Remaining Assets.................................................... 27

3.      Participation Of Post-Effective Date Board Of Directors................................. 28

4.      Distributions To Class 3................................................................................. 28

5.      Form Of Distribution/Undeliverable Distributions.......................................... 29

6.      Corporate Matters Regarding The Debtor. ..................................................... 30

        a.      Cancellation Of Equity Interests ........................................................ 30

        b.      Dissolution Of Debtor........................................................................ 30

7.      Maintenance of Bank Accounts ..................................................................... 31

8.      Prosecution of Recovery Rights and Recovery Rights Against
        Insiders. ......................................................................................................... 31

9.      Effect of Confirmation ................................................................................... 32

10.     Nondischarge And Injunction. ........................................................................ 32

        a.      Nondischarge Of Debtor. ................................................................... 32

        b.      Injunction. ......................................................................................... 32

11.     Retention Of Jurisdiction. .............................................................................. 33

12.     Modification of the Plan. ............................................................................... 34

13.     Objections to Claims...................................................................................... 35

14.     Limitation of Liability.................................................................................... 36

15.     Indemnification. ............................................................................................. 36

V.      CERTAIN FEDERAL INCOME TAX CONSEQUENCES.......................................... 36

        A.      Introduction...................................................................................................... 36

        B.      Federal Income Tax Consequences to Debtor. ................................................. 37

        C.      Federal Income Tax Consequences To Creditors ............................................. 38

                1.      Consequences to Holders of Class 3 Allowed Claims (General
                        Unsecured Claims)......................................................................... 38

                        a.      Recognition of Gain or Loss Generally. ............................... 38

                2.      Other Tax Considerations. .............................................................. 39

                        a.      Market Discount.................................................................. 39

|  |  |  |  |  |
|---|---|---|---|---|
|  |  | b. | Withholding. | 39 |
|  |  | 3. | Receipt Of Interest | 39 |
| VI. | VOTING AND PLAN CONFIRMATION STANDARDS | | | 40 |
|  | A. | Voting On The Plan. | | 40 |
|  |  | 1. | Classes Entitled To Vote. | 40 |
|  |  |  | a. What Is an Allowed Claim/Interest. | 41 |
|  |  |  | b. What Is an Impaired Claim. | 41 |
|  |  |  | c. Who is Not Entitled to Vote. | 41 |
|  |  |  | d. Votes Necessary to Confirm the Plan. | 42 |
|  |  |  | e. Votes Necessary for a Class to Accept the Plan. | 42 |
|  |  | 2. | How To Vote. | 42 |
|  | B. | Confirmation Of The Plan. | | 42 |
|  |  | 1. | Hearing On Confirmation Of The Plan. | 42 |
|  | C. | Feasibility and Risk Factors. | | 44 |
|  | D. | Best Interests Of Creditors Test. | | 45 |
|  | E. | Classification. | | 46 |
|  |  | 1. | No Unfair Discrimination | 46 |
|  |  | 2. | Fair And Equitable Test | 47 |
| VII. | ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN OF LIQUIDATION | | | 47 |
| VIII. | RECOMMENDATION AND CONCLUSION | | | 48 |

# I.

## INTRODUCTION

Imperial Capital Bancor, Inc. (the "Debtor"), debtor and debtor in possession in the above-captioned case, Filed[1] its voluntary petition under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), on December 18, 2009.  The Debtor is distributing this Disclosure Statement to solicit acceptances of the "Chapter 11 Liquidating Plan of Reorganization for Debtor Imperial Capital Bancor, Inc., a Delaware Corporation Dated October 4, 2010" (the "Plan") proposed by the Debtor and Filed with the Bankruptcy Court, a copy of which is attached hereto as Exhibit "A."

The Plan contemplates the liquidation of all of the Debtor's assets and the termination of all of the Debtor's business operations.  The Debtor has prepared the Disclosure Statement pursuant to Bankruptcy Code section 1125 in connection with its solicitation of votes on the Plan.  The purpose of the Disclosure Statement is to provide information of a kind and in sufficient detail to enable the holders of claims in impaired classes to make an informed judgment whether to accept or reject the Plan and to inform holders of unclassified claims, classified claims, and equity interests of their treatment under the Plan.  Neither the Debtor nor the Court has authorized the communication of any information about the Plan other than the information contained in the Disclosure Statement and the related materials transmitted herewith or Filed with the Bankruptcy Court.

On December ___, 2010, after notice and a hearing (the "Disclosure Statement Hearing"), the Bankruptcy Court approved the Disclosure Statement as containing "adequate information" of a kind and in sufficient detail to enable a hypothetical, reasonable investor typical of holders of claims or equity interests to make informed judgments about the Plan.  A copy of the Bankruptcy Court's order approving the Disclosure Statement (the "Disclosure Statement Order") is annexed hereto as Exhibit "B".  Approval of the Disclosure Statement by the Bankruptcy Court does

---

[1]    Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Plan, a copy of which is attached hereto as Exhibit "A."

1    not indicate that the Bankruptcy Court either has passed on the merits of the Plan or recommends

2    acceptance or rejection of the Plan.

3            For the convenience of all parties, the terms of the Plan are summarized in the

4    Disclosure Statement.  Although the Debtor believes that the Disclosure Statement accurately

5    describes the Plan, all summaries of the Plan contained in the Disclosure Statement are qualified by

6    the Plan itself, the exhibits thereto, and the documents described therein, which control in the event

7    of any inconsistency with or incompleteness in the summaries provided in the Disclosure Statement.

8    Accordingly, the Debtor urges each recipient to review carefully the contents of the Disclosure

9    Statement, the Plan, and the other documents that accompany or are referred to in the Disclosure

10   Statement or the Plan before making a decision to accept or reject the Plan.

11           Attached as exhibits to this Disclosure Statement are (1) the Plan (Exhibit "A");

12   (2) the Disclosure Statement Order (Exhibit "B"); and (3) Balance Sheet as of August 31, 2010

13   (Exhibit "C").  Unless otherwise specified herein, this Disclosure Statement is based upon

14   information available to the Debtor as of the date of the Disclosure Statement, and does not reflect

15   events that may occur subsequent to that date, which may have a material impact on the information

16   contained in the Disclosure Statement.  The Debtor will not make any effort to supplement or amend

17   the Disclosure Statement to reflect changes beyond that date.  **THE DEBTOR DOES NOT**

18   **REPRESENT OR WARRANT THAT THIS DISCLOSURE STATEMENT IS COMPLETE**

19   **OR THAT THE INFORMATION CONTAINED HEREIN IS FREE FROM ANY**

20   **INACCURACY OR OMISSION.**

21           ALTHOUGH THE  DEBTOR'S PROFESSIONAL ADVISORS HAVE ASSISTED

22   IN THE PREPARATION OF THIS DISCLOSURE STATEMENT BASED UPON THE

23   FACTUAL INFORMATION AND ASSUMPTIONS FOR THE FINANCIAL, BUSINESS, AND

24   ACCOUNTING DATA PROVIDED BY THE DEBTOR, THE DEBTOR'S PROFESSIONALS

25   HAVE NOT INDEPENDENTLY VERIFIED THE INFORMATION SET FORTH IN THIS

26   DISCLOSURE STATEMENT AND MAKE NO REPRESENTATIONS OR WARRANTIES AS

27   TO SUCH INFORMATION.  NOR DO SUCH PROFESSIONALS REPRESENT OR WARRANT

28

THAT THIS DISCLOSURE STATEMENT IS COMPLETE OR IS FREE FROM ANY INACCURACY OR OMISSION.

ANY INFORMATION, REPRESENTATION, OR INDUCEMENT MADE TO SECURE OR OBTAIN ACCEPTANCES OR REJECTIONS OF THE PLAN THAT ARE OTHER THAN, OR ARE INCONSISTENT WITH, THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY ANY PERSON IN ARRIVING AT A DECISION TO VOTE FOR OR AGAINST THE PLAN.  ANY SUCH ADDITIONAL INFORMATION, REPRESENTATIONS, AND INDUCEMENTS SHOULD BE IMMEDIATELY REPORTED TO THE ATTENTION OF THE DEBTOR AND THE BANKRUPTCY COURT.

## CAUTIONARY STATEMENT

To the extent any information included in this Disclosure Statement contains forward looking statements within the meaning of the Securities Act of 1933, as amended, and the Securities Exchange Act of 1934, as amended, such forward looking information is based on information available when such statements were made and is subject to risks and uncertainties that could cause actual results to differ materially from those expressed in the statements.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS THE COMMISSION PASSED UPON THE ACCURACY OR THE ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

### A.    Summary of Classification and Treatment

The following is a summary of the classification of all claims and interests under the Plan and the proposed treatment of each such class under the Plan.  This summary is qualified in its entirety by reference to more detailed provisions set forth in the Plan, the terms of which are controlling.

| TYPE OF CLAIM OR INTEREST | TREATMENT | ANTICIPATED RECOVERY |
|---|---|---|
| **Administrative Expense Claims** | Each holder of an Allowed Administrative Claim shall receive Cash equal to the unpaid portion of such Allowed Administrative Claim on the later of (x) the Effective Date and (y) the date a Final Order of the Bankruptcy Court is Entered allowing the Administrative Claim. | 100% |
| **Priority Tax Claims** | Each holder of an Allowed Tax Claim shall receive Cash equal to the amount of the Allowed Tax Claim on the later of the (x) Effective Date, and (y) the date an Order of the Bankruptcy Court is Entered Allowing the Tax Claim. | 100% |
| **Secured Claims (Class 1)** | Each holder of an Allowed Secured Claim shall receive on the later of (x) the Effective Date and (y) the date an Order of the Bankruptcy Court is entered allowing the Secured Claim either (i) Cash equal in the amount of the Allowed Secured Claim or (ii) possession of the property in which the holder of the Allowed Secured Claim has a perfected, unavoidable and enforceable lien. | 100% |

| TYPE OF CLAIM OR INTEREST | TREATMENT | ANTICIPATED RECOVERY |
|---|---|---|
| **Priority Claims (Class 2)** | Each holder of an Allowed Priority Claim shall receive Cash equal to the amount of the Allowed Priority Claim on the later of (x) the Effective Date and (y) the date an Order of the Bankruptcy Court is Entered allowing the Priority Claim | 100% |
| **General Unsecured Claims (Class 3)** | Each holder of an Allowed Unsecured Claim shall receive its pro-rata share of Net Estate Proceeds. | Range from 10% to 40%, depending on the outcome of the Tax Refund Complaint and objections to the FDIC's proof of claim (see section IV.A.2.a.iii, infra) |
| **Convenience Claims (Class 4)** | Each holder of an Allowed Convenience Claim shall receive Cash equal to 100% of the amount of the Allowed Convenience Claim on the later of (x) the Effective Date and (y) the date an Order of the Bankruptcy Court is entered allowing the Convenience Claim. | 100% |
| **Interests (Class 5)** | Holders of Class 5 Allowed Interests shall neither receive nor retain any property under the Plan and all Interests of the Debtor shall be cancelled as of the Effective Date. | 0% |

**B.      Summary of Voting On The Plan**

The Court may confirm the Plan if at least one noninsider impaired class of claims has accepted and certain statutory requirements are met as to both nonconsenting members within a consenting class and as to dissenting classes.  A class of claims has accepted the Plan when more than one-half in number and at least two-thirds in amount of the allowed claims actually voting, vote

in favor of the Plan.  A class of interests has accepted the Plan when at least two-thirds in amount of the allowed interests of such class actually voting have accepted it.  It is important to remember that even if the requisite number of votes to confirm the Plan are obtained, the Plan will not bind the parties unless and until the Court makes an independent determination that confirmation is appropriate.  That is the subject of any upcoming confirmation hearing.

In this case, the Debtor believes that Class 3 (General Unsecured Claims) is impaired and therefore entitled to vote.  Classes 1 (Secured Claims), 2 (Priority Claims) and 4 (Convenience Claims) are unimpaired and, therefore, do not vote.  Class 5 (Holders of Interests of the Debtor) will not receive or retain anything under the Plan, and is deemed to reject the Plan.  A party that disputes the Debtor's characterization of its claim or interest as unimpaired may request a finding of impairment from the Court in order to obtain the right to vote.

**After carefully reviewing this Disclosure Statement and the Plan, including the exhibits, each holder of an impaired claim should vote on the enclosed ballot and return it in the envelope provided.**

**TO BE COUNTED, YOUR BALLOT MUST BE COMPLETELY FILLED IN, SIGNED, AND TRANSMITTED IN THE MANNER SPECIFIED IN THE BALLOT SO THAT IT IS RECEIVED BY THE BALLOT TABULATOR BY THE VOTING DEADLINE SPECIFIED IN THE BALLOT.  PLEASE FOLLOW CAREFULLY ALL INSTRUCTIONS CONTAINED IN THE BALLOT. ANY BALLOTS RECEIVED WHICH DO NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN OR WHICH INDICATE BOTH AN ACCEPTANCE AND REJECTION OF THE PLAN WILL NOT BE COUNTED.**

**THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE BEST FEASIBLE RECOVERY TO THE HOLDERS OF CLAIMS IN CLASS 3, AND THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF SUCH HOLDERS.  THE DEBTOR RECOMMENDS THAT THE HOLDERS OF CLAIMS IN CLASS 3 VOTE TO ACCEPT THE PLAN.**

## II.

## HISTORY OF THE DEBTOR

### A.    The Debtor's Business

The Debtor was a diversified bank holding company headquartered in La Jolla, California.  It owns 100% of the common stock of Imperial Capital Bank (the "Bank"), a California state chartered commercial bank that had approximately $4 billion in assets and six retail branches located in California (Beverly Hills, Costa Mesa, Encino, Glendale, San Diego, and San Francisco), two retail branches located in Nevada (Carson City and Las Vegas), and one retail branch located in Baltimore, Maryland.  On the Petition Date, the California Department of Financial Institutions (the "DFI") closed the Bank and appointed and tendered receivership to the Federal Deposit Insurance Corporation (the "FDIC").  Immediately thereafter, the FDIC consummated a sale of certain of the Bank's assets and liabilities to City National Bank.  The Bank had been in business for thirty-five years.

### B.    Events Leading Up To Chapter 11 Filing

Prior to the FDIC's seizure, the Debtor and Bank were primarily engaged in (i) originating and purchasing real estate loans secured by income producing properties for retention in their loan portfolio, (ii) originating entertainment finance loans, and (iii) accepting customer deposits through certificates of deposit, money market, passbook, and demand deposit accounts.

From September 2000 to December 2002, the Debtor created five trusts (the "Trusts") that issued preferred securities.  Specifically, the Trusts are ITLA Capital Statutory Trust I ("Trust I"), ITLA Capital Statutory Trust II ("Trust II"), ITLA Capital Statutory Trust III ("Trust III"), ITLA Capital Statutory Trust IV ("Trust IV"), and ITLA Capital Statutory Trust V ("Trust V").

Trust I issued $14 million of 10.6% cumulative trust preferred securities in September 2000.  Five months later, in February 2001, Trust II issued $15 million of 10.2% cumulative trust preferred securities.  In October 2002, Trust III issued $20 million of variable rate cumulative trust preferred securities.  Finally, in December 2002, Trust IV issued $10 million of variable rate cumulative trust securities and Trust V issued $25 million of variable rate cumulative trust preferred

1 securities.  As of the Petition Date, the total amount of trust preferred securities (the "Trust

2 Securities") was approximately $86.6 million.

3       In the five years prior to the Petition Date, the Bank engaged in a significant amount

4 of residential and condominium construction lending.  The economic events of 2008 and 2009

5 dramatically impacted the Bank with respect to its origination and purchase of real estate loans, as

6 the Bank's construction borrowers, who rely on the sales of homes to repay the Bank's loans, were

7 not able to find buyers.  Some of those construction borrowers defaulted on their Bank loans.

8       On December 29, 2008, trading in the Debtor's shares on the New York Stock

9 Exchange ("NYSE") was suspended due to the Debtor's failure to meet the NYSE's minimum global

10 market capitalization thresholds.  As of the Petition Date, the Debtor's shares were currently trading

11 on the Pink Sheets under the symbol "IMPC".  The Debtor estimates that there are 76 holders of

12 record of the Debtor's common stock, which represent an estimated 1,268 beneficial shareholders

13 with a total of 5,248,760 shares outstanding.

14       After the seizure of the Bank, the Debtor commenced this chapter 11 case to protect

15 its assets and develop a confirmable reorganization plan by utilizing those assets and potential

16 business opportunities.

17 **III.**

18 **EVENTS DURING CHAPTER 11 CASE**

19   **A.**    **FDIC Seizure Of The Debtor's Books And Records**

20       The FDIC seized the Bank without any prior notice and, on the Petition Date, took

21 possession of the entirety of the premises used by both the Bank and the Debtor at 888 Prospect

22 Street, La Jolla, California.  The FDIC took possession of books, records, documents, and personal

23 property without regard to the differentiation between the assets and property of the Debtor and

24 those of the Bank.

25       Among other things, the FDIC seized the Debtor's hard drive containing essential

26 financial information and records.  Complicating matters further was the FDIC's immediate sale of

27 the Bank's assets to City National Bank ("CNB") which, in turn, took possession of the office

28 premises previously occupied by the Bank.  Accordingly, within a very short period of time, the

Debtor was confronted with the loss of access to substantially all of its books and records, the loss of access to its computers and its internet site, and the termination of substantially all of its employees. Due to the overwhelming presence of FDIC lawyers and marshals, it was not possible to physically prevent the FDIC from removing many items of personal property and records which belonged to the Debtor and not to the Bank.

The Debtor, through counsel, attempted to work with the FDIC to restore order and to recover personal property which the FDIC had removed.  Additionally, the Debtor attempted to resolve certain disagreements with the FDIC as to access to particular books and records and to the physical offices that had been used exclusively by the Debtor, and not by the Bank.  The Debtor and FDIC eventually entered into an arrangement under which the FDIC could be given access to additional materials and conduct an on-site inspection, while at the same time preserving all attorney-client and other privileges to the Debtor and obligating the FDIC to return materials, including the Debtor's hard drive, which had been taken during the seizure.

### B.    Recovery Of Assets In The Debtor's Case

Throughout its chapter 11 case, the Debtor has focused on maximizing the value of its assets for the benefit of its creditors.  The Debtor's most valuable assets are (i) its tax refunds for the years 2008 and 2009, (ii) the property contained in a Rabbi Trust account, and (iii) the Debtor's tax net operating losses (the "NOLs").

### 1.    Recovery of Tax Refunds

Prior to the Petition Date, on December 12, 1997, the Debtor (at that time known as ITLA Capital Corporation), and the Bank (at that time known as Imperial Thrift & Loan Association) entered into a tax allocation agreement (the "Tax Allocation Agreement").  Entry into the Tax Allocation Agreement allowed the Debtor and Bank to form an affiliated group that was legally authorized to file consolidated tax returns.   Pursuant to the Tax Allocation Agreement, the Debtor has filed tax returns for the affiliated group, though separate pro forma calculations were prepared as if both the Debtor and the Bank filed tax returns on a separate entity basis.  The Debtor also made all income tax payments for the affiliated group's consolidated returns.

On September 23, 2009, the Debtor filed its Form 1139 Corporation Application for Tentative Refund for the tax year ended 2008 (the "2008 Return"). In the 2008 Return, the Debtor sought to carry back losses for the tax year ended 2008 to the tax years ended 2006 and 2007 and tax credits from 2006 to 2005 for a total refund of approximately $17.1 million (the "2008 Refund"). On or about November 17, 2009, the Debtor received from the IRS approximately $5.9 million on account of the 2008 Return  (the "Partial 2008 Refund"). Shortly thereafter, but prior to the Petition Date, the Debtor turned the Partial 2008 Refund over to the Bank.

In August 2010, the Debtor filed its 2009 consolidated tax return (the "2009 Return"), as well as amended tax returns for years 2004 through 2007 to reflect the net operating loss carryback from 2009 to each of those years, and to claim the refunds from the loss carrybacks (collectively, the "2009 Returns"). The amount of the refund requested in the 2009 Returns is approximately $17.9 million (the "2009 Return" and the "2008 Return" shall be collectively referred to as the "Tax Returns").

The refunds requested in the Debtor's Tax Returns (collectively, the "Tax Refunds") are among the largest assets of the Debtor's estate. Since the Tax Refunds are property of the Debtor's estate, the Debtor is entitled to recovery of all of the Tax Refunds and to distribute such funds through a chapter 11 plan. However, the FDIC has asserted that it is entitled to all or a significant portion of the Tax Refunds in its capacity as receiver for the Bank.

In order to resolve the dispute over ownership of the Tax Refunds, on August 12, 2010, the Debtor filed its "Complaint (I) Seeking a Declaratory Judgment Regarding Ownership of Certain Tax Refunds; and (II) For Actual and Punitive Damages and For an Injunction for Violation of the Automatic Stay" (the "Tax Refund Complaint"), which commenced adversary proceeding number 10-90386-LA11.

Along with seeking a declaratory judgment that the Tax Refunds are property of the Debtor's estate and that the FDIC is a general unsecured creditor of the Debtor's estate, the Complaint seeks a determination that the FDIC violated the automatic stay by filing certain notices with the IRS after the Petition Date.

In late August 2010, the FDIC filed a motion to withdraw the reference of the Tax Refund Complaint to the United States District Court for the Southern District of California (the "District Court").  As of the date of the filing of this Disclosure Statement, the motion to withdraw the reference remained pending.  However, the Debtor has consented to withdrawal of the reference to the District Court of the Tax Refund cause of action in the Tax Refund Complaint.

On August 24, 2010, the Debtor and FDIC entered into the "Stipulation Between Imperial Capital Bancorp, Inc. and the Federal Deposit Insurance Corporation, as Receiver of Imperial Capital Bank to Establish Reserve Account" (the "Tax Reserve Stipulation"), which provided for the escrowing of tax refunds (the "Tax Escrow Stipulation") pending resolution of the Complaint.  The Bankruptcy Court entered an order approving the Tax Escrow Stipulation on the date it was filed.

### 2.    Rabbi Trust Complaint

The Debtor and Union Bank of California, N.A. ("Union Bank"), as trustee, are parties to the "Imperial Capital Bancorp Rabbi Trust Agreement Amended and Restated Effective January 1, 2005" (the "Rabbi Trust Agreement").  The trust (the "Rabbi Trust") created by the Rabbi Trust Agreement was established to provide a source of funds to satisfy the Debtor's obligations under the following six nonqualified benefit plans: (1) Imperial Bancorp Supplemental Executive Retirement Plan, as amended and restated effective January 1, 2005; (2) Imperial Capital Bancorp Salary Continuation Plan, as amended and restated effective February 1, 2006; (3) Imperial Capital Bancorp CNDC Plan (Employer Securities), effective January 1, 2003; (4) Imperial Capital Bancorp CNDC Plan (Non-Employer Securities), effective January 1, 1997; (5) Imperial Capital Bancorp 409A CNDC 2004 Plan (Employer Securities), effective January 1, 2005; and (6) Imperial Capital Bancorp 409A CNDC 2005 Plan (Non-Employer Securities), effective January 1, 2005.

As of the Petition Date, the value of the Rabbi Trust was approximately $2 million.  Additionally, the Rabbi Trust is the owner of a variable life insurance policy (the "Policy") with the Equitable Life Assurance Society of the United States ("Equitable").

Under the terms of the Trust Agreement, in the event of the Debtor's insolvency, all Rabbi Trust assets are subject to the claims of the of the Debtor's general creditors.  Accordingly, the

Debtor was entitled to obtain the transfer of all the assets in the Rabbi Trust, including the Policy, for distribution to its general creditors.

In order to obtain the funds in the Rabbi Trust for its estate, the Debtor filed a complaint (the "Rabbi Trust Complaint") against Union Bank of California, N.A. ("Union Bank") and the beneficiaries of the Rabbi Trust Agreement, Brian Benson, Timothy Doyle, George Haligowski, Thom Hobbs, David Hunt, Charles Kohl, Rosemary Lennon, Lyle Lodwick, Phillip Lombardi, and Scott Wallace (collectively, the "Rabbi Trust Defendants").

In the Complaint, the Debtor sought entry of an order requiring Union Bank to turn over to the Debtor the assets of the Rabbi Trust and a declaratory judgment against the Rabbi Trust Defendants that the Rabbi Trust assets were property of the estate.  In July 2010, Union Bank agreed to the terms of a stipulated judgment that provided the Debtor with the relief requested in the Complaint.  Over the next two months, the Debtor obtained default judgments against seven of the ten individual defendants, and entered into stipulated judgments with the three other individual defendants.   As of the filing of the Disclosure Statement, the Debtor recovered nearly all of the funds in the Rabbi Trust and cash surrender value of the Policy, which collectively total approximately $6.7 million.  The adversary proceeding was closed by the Court on September 27, 2010.

### 3.    Tax NOLs

The Debtor estimates that it possesses approximately $280 million of NOLs, and believes that it might be able to exploit the NOLs and develop a plan of reorganization based on the NOLs that provides greater value to creditors than would be provided under a liquidating plan. While the Plan is a liquidating plan, the Debtor has reserved the right to amend the Plan to provide an alternative to liquidation that would likely involve the participation of a third party investor.  To that end, the Debtor will seek approval of an application to employ KPMG, and the hearing to consider KPMG's employment is presently scheduled to take place in November 2010.

### 4.    Liquidation Of Personal Property

During its case, the Debtor also obtained Bankruptcy Court approval to liquidate certain personal property.  On March 10, 2010, the Court entered an order authorizing the Debtor to

sell four of its automobiles.  Additionally, on July 9, 2010, the Court entered an order allowing the Debtor to sell 1,900 shares of Prudential Financial stock.  Finally, on August 11, 2010, the Debtor received Court authorization to employ Fischer Auction Company, Inc. ("Fischer") to sell certain personal property, and Fischer conducted an auction of the Debtor's office furnishings in September 2010.  Collectively, the Debtor estimates that it obtained the amount of $200,000 for the aforementioned personal property.

### C.       Proofs Of Claim Filed In The Debtor's Case

On April 15, 2010, the Debtor filed its "Ex Parte Motion for Order Establishing a Bar Date for Filing Proofs of Claim or Interest Pursuant to 11 U.S.C. § 501" (the "Bar Date Motion") [Docket No. 136].  This Court granted the Bar Date Motion on the day that it was filed, and established a general claims bar date of June 14, 2010.

### 1.       Proof Of Claim Filed By The FDIC

On or about June 25, 2010, the FDIC filed a proof of claim in the Debtor's case (the "FDIC Claim") in the aggregate sum of $88,900,000.  Among other things, the FDIC asserts in the FDIC Claim that at least $48.2 million of the FDIC Claim is based upon the Debtor's alleged obligation under Bankruptcy Code section 365(o) to assume and immediately cure the capital deficits of the Bank (the "Capital Maintenance Claims").   The FDIC also asserts in its claim that the Capital Maintenance Claims are entitled to priority status.

In order to expeditiously resolve the dispute concerning the allowance and priority of the Capital Maintenance Claims, on July 29, 2010, the Debtor filed its "Objection to 'Capital Maintenance Claims' Portion of Federal Deposit Insurance Corporation's Proof of Claim" (the "Claim Objection") [Docket No. 228].  In the Claim Objection, the Debtor demonstrates, among other things, that the Debtor never made any commitment to any regulatory agency to maintain the capital of the Bank, and that the Capital Maintenance Claims should be disallowed.   A hearing to consider the Claim Objection is set for November 18, 2010.  The FDIC has filed a motion to withdraw the reference of the Claim Objection to the District Court, and a hearing to consider the withdrawal of the reference had not been set as of the filing of the Disclosure Statement.

If the FDIC prevails, it is likely that the Debtor's chapter 11 case will be converted to chapter 7, since the Debtor will be unable to satisfy the Capital Maintenance Claims in full pursuant to Bankruptcy Code sections 365(o) and 507(a)(9).

The FDIC Claim also contains other claims.  First, the FDIC asserts that it is entitled to turnover of Tax Refunds, which total approximately $29 million.  Second, the FDIC asserts a general unsecured claim in the amount of approximately $11.5 million based on the following: (i) approximately $4.5 million in insurance proceeds and premium refund claims, and (ii) approximately $7 million in funds relating to the Rabbi Trust.  Finally, the FDIC asserts unliquidated claims on behalf of the Bank against the Debtor for (i) intercompany charges, (ii) amounts in certain of the Debtor's deposit funds, (iii) potential fraudulent transfers made by the Bank, and (iv) litigation recovery claims.  Aside from the allegations contained in the Tax Refund Complaint, the Debtor has not yet evaluated or prepared objections to the non-section 365(o) claims.

## 2.    General Unsecured Claims

As of the date of the filing of this Disclosure Statement, the total amount of unsecured claims asserted against the Debtor was $93,327,944.01, which consists primarily of claims asserted by the Bank of New York ("BONY") and U.S. Bank National Association ("U.S. Bank"), in their capacity as indenture trustees for the Trust Securities.

## D.    The Debtor's Claim In The Bank's Receivership Estate

On March 24, 2010, the Debtor filed a claim in the Bank's receivership estate (the "Receivership Claim").  In its Receivership Claim, the Debtor alleges the following claims:  (i) turnover of tax refunds, (ii) reservation of rights to bring an action based on Bankruptcy Code sections 547 and 548, (iii) reimbursement of expenses pursuant to an expense sharing and services agreement between the Debtor and Bank, (iv) damages against the FDIC-R for improper asset seizures, and (v) recovery of the monies in an account that was improperly transferred to City National Bank.  The Debtor alleges that the total amount of the Receivership Claim is at least $7 million.

On August 6, 2010, the FDIC sent the Debtor a notice of disallowance of the Receivership Claim. Pursuant to 12 U.S.C. § 1821(d)(6), the Debtor is preparing a lawsuit to be filed in the District Court that will challenge the FDIC's disallowance of the Receivership Claim.

### E.   General Pleadings Filed In Debtor's Case

Throughout its case, the Debtor has also filed numerous motions and applications relating to the administration of its chapter 11 case.

#### 1.   First Day Motions

On the Petition Date, the Debtor filed three emergency motions with the Court: (1) the Motion for an Order Limiting the Scope of Notice (the "Limit Notice Motion"), (2) the Motion for Continuance of Utility Service and Approval of Adequate Assurance of Payment to Utility Companies (the "Utility Motion"), and (3) the Motion for Order Extending Time to File Schedules and Statements (the "Schedule Extension Motion") (collectively, the "First Day Motions"). The Bankruptcy Court entered orders approving all of the First Day Motions.

#### 2.   Schedules And Statement Of Financial Affairs

Despite not having access to its books and records, on January 21, 2010, the Debtor filed its Schedules and Statement of Financial Affairs ("SOFA"). After obtaining its books and records, the Debtor filed amendments to the Schedules and SOFA on February 23, 2010 and March 1, 2010, respectively. In its amended Schedules, the Debtor estimated that its assets totaled approximately $40.4 million and that its prepetition liabilities were approximately $98.7 million.

#### 3.   Modification Of Lease

Shortly after the Petition Date, the Debtor recognized that it would not need to utilize the 21,903 square feet of La Jolla office space that it had been leasing under the "Agreement of Lease" (the "Lease") with 888 Prospect LJ, LLC (the "Landlord"). The monthly rent under the Lease was approximately $81,216.00. Rather, the Debtor only needed to utilize one suite (Suite 300) that consisted of approximately 1,736 square feet. Accordingly, the Debtor reached an agreement with the Landlord whereby the Debtor agreed to reject the Lease as of January 31, 2010, and enter into a new month-to-month lease ("New Lease") for Suite 300 whereby the Debtor would only pay monthly rent of $6,440.56. The Debtor filed and served a motion for approval (the "Lease

Motion") to enter into a stipulation (the "Stipulation") to reject the Lease and enter into the New Lease, which was approved by the Bankruptcy Court.

On September 23, 2010, the Debtor filed a motion for authority to enter into an amendment to the New Lease. Under the amendment, the Debtor will be relocating to Suite 210 at 888 Prospect Avenue, and its rental payments will decrease by over $1,000/month.

### 4. Interim Compensation For Professionals And Insider Compensation

On May 3, 2010, the Debtor filed its "Motion for Order Pursuant to 11 U.S.C. § 105 and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals" (the "Interim Compensation Motion"). Through the Interim Compensation Motion, the Debtor sought approval of a procedure that would authorize the professionals employed in this case to receive payment of 80% of their fees and 100% of their expenses on a monthly basis. This Court entered an order approving the Interim Compensation Motion on June 11, 2010.

Additionally, during the Case, the Debtor has filed applications to compensate Messrs. Kiley and Rusnak pursuant to Local Bankruptcy Rule 4002-2. The Bankruptcy Court has authorized the Debtor to pay Mr. Kiley the amount of $10,000/month and Mr. Rusnak the amount of $12,333.34/month.

### 5. Motion To Limit Trading Of Common Stock

As stated above, the Debtor has considered the formulation of a reorganization plan, rather than a liquidating plan. Such a plan would likely involve the use of the Debtor's NOLs. In theory, the Debtor could enter into a transaction whereby a third party would provide consideration to the Debtor for its corporate shell and NOLs. However, a corporation's ability to use its NOLs may be reduced or eliminated under certain circumstances. Once all or part of a NOL is disallowed on account of an "ownership change" under the Internal Revenue Code, that NOL's use is limited forever.

Accordingly, to prevent the potential loss of NOLs, the Debtor filed its "Motion for Order (A) Limiting Certain Transfers of Equity Interests in the Debtor and (B) Approving Related Notice Procedures" (the "NOL Motion"). The relief requested in the NOL Motion was designed to provide the Debtor with advance notice of certain transfers that may jeopardize its NOLs, and to

1  enable the Debtor, if necessary, to obtain substantive relief from this Court to protect those NOLs.

2  This Court entered an order approving the NOL Motion on August 13, 2010.

3        **F.**    **Appointment Of Committee**

4        On March 9, 2010, the Office of the United States Trustee ("UST") appointed a three

5  member official committee of creditors holding unsecured claims against the Debtor (the

6  "Committee").  Official committees appointed under section 1102 of the Bankruptcy Code have,

7  among other rights, the rights (i) to consult with a debtor concerning administration of the case;

8  (ii) to investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the

9  debtor's operations, and any other matter relevant to the case or to the formulation of a plan; and

10  (iii) to participate in the formulation and acceptance or rejection of a plan.  The Committee consists

11  of the following entities:  (1) US Bank as Trustee for ITLA Capital Statutory Trusts I, II, V;

12  (2) 888 Prospect LJ, LLC; and (3) The Bank of New York Mellon as Indenture Trustee.

13        **G.**    **Retention Of Professionals.**

14        The Debtor received Court approval to employ the following professionals:

15        (1)    Stutman, Treister & Glatt Professional Corporation ("ST&G") as

16        reorganization counsel for the Debtor (order entered January 20, 2010);

17        (2)    Squar, Milner, Peterson, Miranda & Williamson LLP as accountants for the

18        Debtor ("Squar") (order entered January 28, 2010);

19        (3)    Silver Freedman & Taff LLP ("Silver") as special regulatory counsel for the

20        Debtor (order entered January 28, 2010); and

21        (4)    Ernst & Young, LLP, as tax services provider to the Debtor (order entered

22        April 14, 2010).

23        The Committee obtained Court approval to employ the following professionals:

24        (1)    Akin Gump Strauss Hauer & Feld LLP, as counsel to the Committee (order

25        entered April 19, 2010); and

26        (2)    FTI Consulting, Inc., as financial advisor to the Committee (order entered July

27        2, 2010).

28

**H.    Officers and Members of the Board of Directors**

The Debtor's Board of Directors consists of Norval L. Bruce, George W. Haligowski, Joseph W. Kiley, III, Jeffrey L. Lipscomb, Sandor X. Mayuga, Hirotaka Oribe, and Robert R. Reed.

Mr. Kiley is also the Debtor's Chief Executive Officer.  Mr. Anthony Rusnak is Chief Operating Officer, General Counsel, and Secretary for the Debtor.

**I.    Current Value of Debtor's Assets**

Assuming that the Debtor prevails in the Tax Refund Complaint, as of the filing of this Disclosure Statement, the Debtor estimates that its assets total approximately $42.5 million.  See Exhibit "C" to this Disclosure Statement (Balance Sheet).  Among the more significant assets are the following:

**1.    Cash on Hand**

As of the date of the filing of this Disclosure Statement (but which is not reflected in Exhibit "C", which will be amended prior to the hearing on the Disclosure Statement), the Debtor had cash on hand of approximately $12.2 million, which is presently being held in a number of accounts with Bank of America and Torrey Pines Bank.  This cash was generated through, inter alia, (1) collection of the proceeds in the Rabbi Trust Account, (2) obtaining the cash surrender value of two life insurance policies, and (3) the sale of personal property.

**2.    Tax Refunds**

As stated above (see section III.B.1, supra), the Debtor estimates that it will receive the amount of $29 million on account of the 2008 and 2009 Tax Refunds.   The FDIC has asserted that it is entitled to the Tax Refunds, and, as previously discussed (see section III.B.1, supra), an adversary proceeding (the Tax Refund Complaint) to resolve this dispute is presently pending before the Bankruptcy Court (or the District Court, if it enters an order withdrawing the reference of the Tax Refund Complaint) to resolve this dispute.

**3.    Other Assets**

The Debtor also possesses approximately $140,000 in other assets, including: (i) prepaid Delaware state taxes ($99,945); (ii) rental security deposit ($30,971.51); and (iii) miscellaneous accounts receivable ($13,860.77).

## IV.

## SUMMARY OF THE PLAN OF REORGANIZATION

The Plan divides the Debtor's prepetition, non-tax claims into four categories: (1) Secured Claims, (2) Priority Claims, (3) General Unsecured Claims, and (4) Convenience Claims.  A fifth class is for the holders of interests in the Debtor.

The Debtor does not believe that it has any secured claims, but to the extent that there are any such claims, those claims will be left unimpaired, i.e., those claimants will have available to them all rights and remedies that would otherwise be available were the Debtor not in a chapter 11 proceeding.

To the extent the Debtor has any allowed non-tax priority unsecured claims, the Plan provides for those claims to be unimpaired.

General Unsecured Claims (other than Convenience Claims that are in Class 4) are all included in Class 3.  Class 3 claims are impaired.  The Plan provides that each holder of an Allowed Unsecured Claim shall receive, on account of and in full satisfaction of its Allowed Unsecured Claim, its pro-rata share of the Net Estate Proceeds, a defined term under the Plan.  Essentially, Net Estate Proceeds are the monies remaining after all costs and expenses of administration have either been paid or reserved for and all senior claims (such as secured claims and priority unsecured claims, if any) have been paid in full.

Convenience Claims are unsecured claims, the allowed amount of which are $10,000 or less or which are reduced to $10,000.  The Plan provides for each holder of an Allowed Convenience Claim to receive Cash equal to 100% of the amount of the Allowed Convenience Claim.

Class 5 is comprised of holders of Interests in the Debtor.  Holders of Class 5 Allowed Interests shall neither receive nor retain any property under the Plan and all Interests of the Debtor shall be cancelled as of the Effective Date of the Plan.

THE DESCRIPTION OF THE PLAN SET FORTH BELOW IS ONLY A SUMMARY OF SOME OF THE MORE MATERIAL PROVISIONS OF THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED PROVISIONS

SET FORTH IN THE PLAN, THE TERMS OF WHICH ARE CONTROLLING OVER THE SUMMARY SET FORTH BELOW.  The Plan is attached hereto as Exhibit "A" and is made a part of this Disclosure Statement.

**A.     Summary Of Classification Of Treatment Of Claims And Interests Under The Plan.**

The following discussion summarizes the classification and treatment of claims and interests under the Plan.

**1.     Unclassified Claims.**

Certain types of Claims are not placed into voting Classes; instead they are unclassified.  They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Code.  As such, the Debtor has <u>not</u> placed the following Claims in a Class.  The treatment of these Claims is provided below.

**a.     Administrative Claims.**

**i.     Treatment.**

Administrative claims are generally comprised of the actual and necessary costs and expenses of preserving the Estate and operating the business of the Debtor after the Petition Date.  The Bankruptcy Code requires that allowed administrative expenses be paid on the effective date unless the party holding the administrative expense agrees otherwise.

Unless otherwise agreed to by the parties, each holder of an Allowed Administrative Claim shall receive Cash equal to the unpaid portion of such Allowed Administrative Claim on the later of (x) the Effective Date, (y) the date a Final Order of the Bankruptcy Court is Entered allowing the Administrative Claim, and (z) a date agreed on by the Debtor and the holder of the Allowed Administrative Claim.

The Debtor is presently aware of two types of Administrative Claims.  The first type consists of debt incurred by the Debtor in the ordinary course of its business (other than tax claims) since the Petition Date, including trade debt and operating expenses.  Holders of these types of Administrative Claims will not be required to File any requests for payment of such claims.  Such Administrative Claims shall be assumed and paid by the Revested Debtor pursuant to the terms and

conditions of a particular transaction giving rise to such Administrative Claim, without any further action by the holders of such claim.

The second type of Administrative Claim consists of claims for fees and expenses as allowed by Order of the Bankruptcy Court for professionals employed by the Debtor.  All compensation awarded to professionals under the Bankruptcy Code must be approved by the Bankruptcy Court, and professionals must file fee applications that are considered by the Court. The Debtor anticipates paying the balance of all awarded fees and costs promptly after any such award.

Since the Petition Date, the Debtor has made administrative expense payments to professionals and other entities pursuant to various Court orders, and as stated above, after the Effective Date, professionals will file final fee applications that seek approval of such payments of administrative claims.  The following chart lists the estimated unpaid amounts for the Debtor's Administrative Claims and their treatment under the Plan, as of the date of the filing of this Disclosure Statement.  Since this number will increase prior to the hearing on the Disclosure Statement, the Debtor will provide amended amounts prior to the hearing to consider the adequacy of the Disclosure Statement.

| Name | Amount Owed | Treatment |
|---|---|---|
| Stutman, Treister & Glatt Professional Corporation, reorganization counsel to Debtor | $177,376.12 | Paid in full on later of Effective Date or entry of order allowing fees |
| Silver Freedman & Taff LLP ("Silver") special regulatory counsel for the Debtor | $3,386.25 | Paid in full on later of Effective Date or entry of order allowing fees |
| Ernst & Young, LLP, tax services provider to the Debtor | $12,444.30 | Paid in full on later of Effective Date or entry of order allowing fees |
| Akin Gump Strauss Hauer & Feld LLP, counsel to the Committee | To be provided | Paid in full on later of Effective Date or entry of order allowing fees |
| FTI Consulting, Inc.,  financial advisor to the Committee | To be provided | Paid in full on later of Effective Date or entry of order allowing fees |

### ii.    Deadlines.

All applications, including final applications, for compensation of Professionals for services rendered and for reimbursement of expenses incurred on or before the Effective Date, and any other request for compensation by any Person or entity for making a substantial contribution in the Case, and all other requests for payment of an Administrative Claim incurred before the Effective Date under sections 507(a)(1) or 507(b) of the Code (except only for Claims under 28 U.S.C. section 1930) shall be filed no later than sixty (60) days after the Confirmation Date.

As to other administrative expenses that do not require Bankruptcy Court approval to become Allowed Claims, Creditors shall submit such Claims to the Debtor no later than sixty (60) days after the Confirmation Date or by such other bar date as the Bankruptcy Court may set. Holders of claims for the provision of goods and services postpetition to the Debtor need not file proofs of claim for administrative expenses.

Any such Claim not filed or submitted as explained above within these deadlines shall be forever barred, and any Creditor who is required to file a request for payment of such Claim and who does not file such request by the applicable bar date shall be forever barred from asserting such Claim against the Estate or its property.

The indenture trustee for the trust preferred securities that form the basis for the Trust Claims has provided and will continue to provide necessary services postpetition to the holders of the Trust Claims. All reasonable fees and expenses of the indenture trustee (including the fees and expenses of professionals employed by the indenture trustee) that are incurred in connection with the Case shall be deemed to be allowed administrative expenses, and any such fees and expenses due and payable and not paid as of the Effective Date shall be paid on the Effective Date; provided however that to the extent such fees and expenses are due and payable after the Effective Date, such fees and expenses shall be paid no later than ten (10) days after the applicable invoice date. The indenture trustee and its professionals shall not be required to file any application with or obtain approval of the Bankruptcy Court in order to receive payment of the fees and expenses. The indenture trustee shall be entitled to reasonable fees and expenses incurred in the implementation of

the Plan, including with any such fees and expenses incurred in connection with distributions made under the Plan.

### b.    Priority Tax Claims.

Priority Tax Claims are comprised of claims of federal, state and local governmental units for taxes, interest and penalties for certain periods specified in section 507(a) of the Bankruptcy Code.   The California Franchise Tax Board ("FTB") has filed a priority claim in the amount of approximately $4.25 million.  While the Debtor has not completely analyzed the FTB's claim, the Debtor believes that the claim is invalid.  The Debtor is unaware of any material Priority Tax Claims.

Unless otherwise agreed to by the parties, each holder of an Allowed Tax Claim shall receive Cash equal to the amount of the Allowed Tax Claim on the later of (x) the Effective Date, and (y) the date an Order of the Bankruptcy Court is Entered allowing the Tax Claim.  Holders of Tax Claims shall not be entitled to receive any payment on account of interest that accrued after the Petition Date on, or penalties with respect to or arising in connection with, such Tax Claims, except as specifically allowed by the Bankruptcy Court.

### 2.    Classification and Treatment of Claims.

#### a.    Classes Of Claims And Interests.

The following is a designation of the classes of claims and interests under the Plan.  A claim or interest is classified in a particular class only to the extent that the claim or interest qualifies within the description of that class and is classified in a different class to the extent that any remainder of the claim or interest qualifies within the description of such different class.  A claim or interest is in a particular class only to the extent that the claim or interest is an Allowed Claim or Allowed Interest in that class and has not been paid, released, or otherwise satisfied before the Effective Date.

#### i.    Class 1 (Secured Claims)

Class 1 consists of all Secured Claims.  Unless otherwise agreed to by the parties, each holder of an Allowed Secured Claim shall receive on the later of (x) the Effective Date, and (y) the date an Order of the Bankruptcy Court is Entered allowing the Secured Claim, on account of

and in full satisfaction of its Allowed Secured Claim, either of the following treatments at the sole election of the Debtor: (i) Cash equal to the amount of the Allowed Secured Claim or (ii) possession of the property in which the holder of the Allowed Secured Claim has a perfected, unavoidable and enforceable lien, security interest or other charge and relief from the automatic stay provided by section 362 of the Bankruptcy Code to foreclose, collect upon or setoff the property in accordance with applicable non-bankruptcy law.  However, at any time after the Confirmation Date, the Debtor can elect to give to the holder of an Allowed Secured Claim the treatment provided in subparagraph (ii) above.

Class 1 is unimpaired under the Plan and the holders of Class 1 Allowed Claims are deemed to accept the Plan.  The Debtor does not believe that there are any Secured Claims in this Case.

### ii.    Class 2 (Priority Claims)

Class 2 consists of all Priority Claims.  Unless otherwise agreed to by the parties, each holder of an Allowed Priority Claim shall receive Cash equal to the amount of the Allowed Priority Claim on the later of (x) the Effective Date, and (y) the date an Order of the Bankruptcy Court is Entered allowing the Priority Claim.

Class 2 is not impaired under the Plan and holders of Class 2 Allowed Claims are deemed to accept the Plan.  As stated above, the FDIC has alleged that it possesses a $48.2 million priority claim against the Debtor.  The Debtor has filed an objection to the FDIC Claim, and a hearing to consider the FDIC Claim has been set for November 18, 2010.  If the FDIC Claim is allowed as a priority claim, the Debtor will be unable to confirm the Plan absent FDIC consent.  In addition, the Debtor believes that there may be nominal employee related claims entitled to priority.

### iii.    Class 3 (General Unsecured Claims)

Class 3 consists of all Unsecured Claims against the Debtor that are not included in any other Class in the Plan or otherwise provided for in the Plan.  Each holder of an Allowed Unsecured Claim shall receive, on account of and in full satisfaction of its Allowed Unsecured Claim, its pro-rata share of the Net Estate Proceeds.  Distributions to holders of Class 3 Claims shall

be governed by Art. V., § E of the Plan.  Class 3 is impaired under the Plan and holders of Class 3 Allowed Claims are entitled to vote to accept or reject the Plan.

The Debtor estimates that Holders of Allowed Class 3 Claims will receive between 10% to 40% on account of their claims against the Debtor.  The reason for this range is that, at the time of the filing of this Disclosure Statement, the FDIC Claim had not been liquidated.  As discussed above, the FDIC Claim can be broken down into three categories:  (i) the Capital Maintenance Claims in the amount of approximately $48.2 million (asserted to be a priority claim by the FDIC), (ii) assertion of an entitlement to the Debtor's Tax Refunds in the amount of approximately $29 million, and (iii) a general unsecured claim in the amount of at least $11.5 million.

As stated above, if the FDIC's Capital Maintenance Claim is allowed, the Debtor's case will likely be converted to chapter 7.  The following table illustrates the recovery to Holders of Allowed Class 3 Claims in other scenarios where the Debtor's objection to the Capital Maintenance Claim is sustained:

| Outcome of Actions | Total Amount of Property Available for Distribution to Class 3 Creditors | Total Amount of Allowed Class 3 Claims | Recovery to Holders |
|---|---|---|---|
| Debtor prevails in Tax Refund Action, and remainder of FDIC Claim is disallowed | Approximately $40 million | Approximately $98 million | Approximately 40% |
| Debtor prevails in Tax Refund Action, but FDIC's tax refunds and general unsecured claims are allowed | Approximately $40 million | Approximately $138 million | Approximately 29% |
| FDIC prevails in Tax Refund Action and FDIC's general unsecured claims are disallowed | Approximately $11 million | Approximately $98 million | Approximately 11% |
| FDIC prevails in Tax Refund Action and FDIC's general unsecured claims are allowed | Approximately $11 million | Approximately $109 million | Approximately 10% |

#### iv.    Class 4 (Convenience Claims)

Class 4 consists of Convenience Claims.  Each holder of an Allowed Convenience Claim shall receive, on account of and in full satisfaction of its Allowed Convenience Claim and any Unsecured Claim reduced to a Convenience Claim, Cash equal to 100% of the amount of the Allowed Convenience Claim on the later of (x) the Effective Date, and (y) the date an Order of the Bankruptcy Court is Entered allowing the Convenience Claim.  Class 4 is unimpaired under the Plan and the holders of Class 4 Allowed Claims are deemed to accept the Plan.

Without taking into consideration the claims of creditors that elect to reduce their claims to under $10,000, the Debtor believes that the total amount of Class 4 Claims is approximately $50,000.

#### v.    Class 5 (Holders of Interests In the Debtor)

Class 5 is comprised of holders of Interests in the Debtor.  Holders of Class 5 Allowed Interests shall neither receive nor retain any property under the Plan and all Interests of the Debtor shall be cancelled as of the Effective Date.  Class 5 is impaired under the Plan and the holders of Allowed Class 5 Interests are deemed to reject the Plan.

### B.    Executory Contracts And Unexpired Leases.

Subject to certain limitations, the Debtor has the right, subject to Bankruptcy Court approval, to assume or reject any executory contract or unexpired lease entered into prior to the Petition Date.  Generally, damages resulting to the other party from a rejection are treated as an Unsecured Claim arising prior to the Petition Date and included in the appropriate class to the extent such claim is allowed by the Bankruptcy Court.

All executory contracts or unexpired leases of the Debtor, except (a) those previously assumed and assigned by Bankruptcy Court order, or (b) those which are assumed under the Plan, are rejected.  The Debtor shall file a schedule of executory contracts to be assumed under the Plan no later than 20 days prior to the Confirmation Hearing.

Any Claims arising from the rejection of an executory contract or unexpired lease as a result of Confirmation of the Plan shall be filed with the Bankruptcy Court and served on the Revested Debtor, and its counsel, no later than thirty (30) days after the Confirmation Date.

The Debtor reserves the right at any time before Confirmation to amend the schedule of executory contracts to be assumed.  The Debtor shall provide notice of any amendment to the parties to the affected executory contract or unexpired lease and the Office of the United States Trustee.

**C.    Implementation Of The Plan.**

      **1.    Distributions and Actions on the Effective Date.**

On the Effective Date, or as soon thereafter as practicable, and in accordance with the terms of the Plan:

      1.    The Debtor shall make the required payments, if any, to the holders of Allowed Administrative Claims, Allowed Tax Claims, Allowed Class 1 Claims, Allowed Class 2 Claims and Allowed Class 4 Claims.

      2.    The Revested Debtor shall administer all remaining property and assets, other than the Recovery Rights Against Insiders which shall be administered by the Post-Effective Date Committee, and distribute the proceeds thereof and the proceeds received from any Recovery Rights Against Insiders in accordance with the terms of the Plan.

      3.    The Revested Debtor shall prosecute and administer the Recovery Rights but not the Recovery Rights Against Insiders which shall be the sole province of the Post-Effective Date Committee.

      4.    On the Effective Date, the Post Effective Date Committee shall have standing to and shall prosecute and administer the Recovery Rights Against Insiders as the Post Effective Date Committee deems appropriate, in its sole discretion.

      **2.    Liquidation of Remaining Assets.**

On and after the Effective Date, the Revested Debtor shall liquidate and administer all the assets and other property of the Estate, including the Recovery Rights, but excluding the Recovery Rights Against Insiders, which shall be the sole province of the Post Effective Date Committee, in accordance with the terms of the Plan.  All the assets and other property of the Estate, including the Recovery Rights, but excluding the Recovery Rights Against Insiders (which shall be the sole province of the Post Effective Date Committee) shall be reduced to Cash or abandoned if determined by the

Revested Debtor to have no reasonably expected material value in excess of the expenses required to liquidate such assets, considering, among other things, the risk, delay and uncertainty attendant with such liquidation.  The Net Estate Proceeds will be distributed to holders of Class 3 Allowed Claims in accordance with the terms of the Plan.

### 3.    Participation Of Post-Effective Date Board Of Directors.

On the Effective Date, the Post-Effective Date Board of Directors shall be established with four (4) members, two (2) of whom shall be appointed by the Committee and the others by the Revested Debtor. All final actions to be taken by the Debtor or the Revested Debtor with respect to the assets of the Estate, including compromising, settling or abandoning any actions related to the Recovery Rights (other than Recovery Rights Against Insiders) or claims objections, shall be done after consultation with and the consent of the Post-Effective Date Board of Directors.

The Revested Debtor will provide the Post-Effective Date Board of Directors with quarterly reports concerning the status of funds held by the Estate, the status of Claims and objections to Claims, ongoing activities with respect to Recovery Rights and the date of any proposed distributions.  In addition, the Revested Debtor shall give the Post-Effective Date Board of Directors at least thirty (30) days written notification of the date of the Final Distribution (as such term is defined below).

Members of the Post-Effective Date Board of Directors may resign at any time upon written notice to the other members of the Post-Effective Date Board of Directors.  Any vacancy on the Post-Effective Date Board of Directors will be filled by the Committee Designee  if the member appointed by the Committee resigns or by the Revested Debtor if one of its two members resign.  The failure to fill a vacancy however shall have no effect on the Post-Effective Date Board of Directors' authority under the Plan.

### 4.    Distributions To Class 3.

As soon as is practicable after the Effective Date, the Revested Debtor shall make a Cash interim distribution (the "Interim Distribution") from the Estate pursuant to the terms of the Plan to the holders of Allowed Claims in Class 3.  However, if in the opinion of the Revested Debtor and the Post-Effective Date Board of Directors such distribution would be de minimis or impracticable in

comparison to the time and costs involved in making an Interim Distribution, then the Interim Distribution may be postponed until such time as there are sufficient funds in the Estate.

The Interim Distribution shall consist of the funds on hand in the Estate at the time such Interim Distribution is made, less a reserve (the "Reserve") estimated by the Post-Effective Date Board of Directors in good faith for current and prospective fees, costs and expenses of Post-Effective Date activities (including those of the Post-Effective Date Committee), for unpaid Administrative Claims and administrative expenses and for Disputed Claims. The Interim Distribution shall be made pro rata to all holders of Class 3 Allowed Claims.

Except for the Final Distribution, subsequent distributions shall be made in the discretion of the Post-Effective Date Board of Directors, based upon funds available for distribution and the time and costs involved in making any such subsequent distribution. At such time as all actions relating to the Recovery Rights and Recovery Rights Against Insiders have been completed, settled or abandoned and all other assets liquidated to Cash or abandoned, the Revested Debtor shall make a final distribution (the "Final Distribution") of all funds on hand in the Estate, after payment of any remaining costs, expenses and fees of the Estate, pro rata to holders of Class 3 Allowed Claims pursuant to the terms of the Plan.

**5.    Form Of Distribution/Undeliverable Distributions.**

All distributions under the Plan shall be made by check mailed by first-class mail through the United States mail, with postage fully prepaid, or by wire transfer. Distributions are deemed made under the Plan on the date of the mailing of the checks or the wiring of funds. Distributions returned by the Post Office or undelivered due to lack of a current address or for any other reason shall be retained by the Revested Debtor for a period of six (6) months following their return unless claimed by the claimant within that time period. During the six (6) month period following any distribution, a claimant may retrieve any returned distribution upon presentation to the Revested Debtor of satisfactory proof that such holder is entitled to such distribution.

After the expiration of six (6) months following the date a distribution is made, holders of Allowed Claims entitled to returned distributions shall no longer be entitled thereto, and such Allowed Claims shall be deemed disallowed without further Court order. Thereafter, any unclaimed

distributions shall be held in the Estate for distribution to holders of Allowed Claims at the time of the Final Distribution.

No provision contained in Section E of the Plan shall be interpreted to require the Debtor, the Revested Debtor, the Post-Effective Date Board of Directors or the Post-Effective Date Committee to attempt to locate any such person. The address shown on the Debtor's schedules for a creditor, if such creditor has not filed a proof of claim, or on such creditor's proof of claim filed with the Court shall be deemed to be a creditor's address for purposes of distributions hereunder unless at least seven (7) days prior to any distribution a written change of address is delivered to the Revested Debtor or counsel for the Revested Debtor.

### 6.    Corporate Matters Regarding The Debtor.

#### a.    Cancellation Of Equity Interests

On the Effective Date, all Interests shall be cancelled and be of no further force or effect, without any further action being required to effect such cancellation. Concurrently with the cancellation of the Interests as required in this section, the Debtor will issue one share of new common stock. This new share of stock will be held by the Committee Designee for the benefit of all entities holding Allowed Unsecured Claims. Once the Final Distribution date has occurred and the Court has Entered a Final Order closing this Case, this new share of stock will automatically be cancelled without any further action. The members of the Post-Effective Date Board of Directors shall not be replaced by the holder of the share of stock until all assets of the Revested Debtor and the Estate have been liquidated, including the Recovery Rights, but excluding the Recovery Rights Against Insiders.

#### b.    Dissolution Of Debtor.

On the date that both the Final Distribution has occurred and the Court has Entered a Final Order closing this Case, the Debtor/Revested Debtor shall be dissolved as a Delaware corporation, without any further action being required to effect such dissolution. The Debtor/Revested Debtor is authorized to file a certificate of dissolution with the Delaware Secretary of State. As of the Effective Date, the Debtor, as the Revested Debtor, will continue to be governed as a Delaware corporation in accordance with the Plan.

### 7.     Maintenance of Bank Accounts

All Cash held by the Estate on the Effective Date plus the proceeds received by the Estate from the liquidation of the assets of the Estate after the Effective Date shall be held in one or more separate bank or other depository accounts or investment accounts, in accordance with section 345 of the Bankruptcy Code.  The Revested Debtor shall be entitled to use the Debtor's bank accounts that are in existence as of the Effective Date and shall be authorized to open such other bank or depository accounts as may be necessary or appropriate in its discretion to enable it to carry out the provisions of the Plan.  The Revested Debtor may, from time to time, invest Cash held by the Estate on the Effective Date plus the proceeds received by the Estate from the liquidation of the assets of the Estate in certificates of deposit, treasury bills, money market accounts or other short term investments, consistent with section 345 of the Bankruptcy Code.  All interest earned thereon shall be retained for distribution to the holders of Allowed Claims in Class 3 pursuant to the Plan.

### 8.     Prosecution of Recovery Rights and Recovery Rights Against Insiders.

The Revested Debtor shall have full power and authority, to be exercised subject to consultation with, and the prior approval of, the Post-Effective Date Board of Directors to commence, if not already commenced, prosecute, settle and abandon any action related to the Recovery Rights but not as to Recovery Rights Against Insiders, subject to consultation rights of the Post-Effective Date Committee.  After the Effective Date, all actions relating to the Recovery Rights shall be filed and prosecuted in the name of the Revested Debtor.  Any counsel retained to prosecute Recovery Rights prior to the date the Confirmation Order becomes a Final Order shall not be disqualified from being retained by the Revested Debtor on the same terms and conditions of its prior employment solely by reason of that prior employment.

The Post-Effective Date Committee shall have standing and full power and authority, either in its name, the Revested Debtor's name or both, in its sole discretion to commence, if not already commenced, prosecute, and abandon any action related to Recovery Rights Against Insiders. All settlements of Recovery Rights Against Insiders shall be approved by the Bankruptcy Court after notice and a hearing.  The Post-Effective Date Committee shall be authorized to retain counsel to prosecute these actions.  Any counsel retained to prosecute Recovery Rights Against Insiders prior

to the date the Confirmation Order becomes a Final Order shall not be disqualified from being retained by the Post-Effective Date Committee on the same terms and conditions of its prior employment solely by reason of that prior employment.

### 9. Effect of Confirmation

On the Confirmation Date, the provisions of the Plan shall be binding on the Debtor, the Revested Debtor, the Estate, all holders of Claims against or Interests in the Debtor, and all other parties in interest whether or not such holders are impaired and whether or not such holders have accepted the Plan.

### 10. Nondischarge And Injunction.

#### a. Nondischarge Of Debtor.

Pursuant to section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order shall not discharge Claims against the Debtor.  However, no creditor of the Debtor or holder of an Interest may receive any payment from or seek recourse against any assets that are to be distributed under the Plan, except for those assets required to be distributed to that Creditor as expressly provided for in the Plan.  As of the Effective Date, all entities are precluded from asserting against the Debtor, the Revested Debtor, or any property that is to be distributed under the Plan any Claims, rights, causes of action, liabilities or Interests based upon or related to any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, other than as expressly provided in the Plan or the Confirmation Order, regardless of the filing, lack of filing, allowance or disallowance of such a Claim or Interest and regardless of whether such an entity has voted or not voted to accept or reject the Plan.

#### b. Injunction.

Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date all entities that have held, currently hold or may hold a debt, claim, other liability or interest against or in the Debtor that would be discharged upon confirmation of the Plan and the Effective Date but for the provisions of section 1141(d)(3) of the Bankruptcy Code and Section I.1. of the Plan are permanently enjoined from taking any of the following actions on account of such debt, claim, liability, interest or right:  (a) commencing or continuing in any manner any action or other

proceeding on account of such debt, claim, liability, interest or right against the Debtor, the Revested Debtor, or property that is to be distributed under the Plan, other than to enforce any right to a distribution with respect to such property under the Plan; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Debtor, the Revested Debtor, or any property to be distributed to creditors under the Plan, other than as permitted under subparagraph (a) above; and (c) creating, perfecting or enforcing any lien or encumbrance against any property to be distributed under the Plan, other than as permitted by the Plan.

On and after the Effective Date, each holder of an Interest in the Debtor is permanently enjoined from taking or participating in any action that would interfere or otherwise hinder the Debtor from implementing the Plan or the Confirmation Order.

## 11. Retention Of Jurisdiction.

Following confirmation of the Plan, the Bankruptcy Court shall retain such jurisdiction as is legally permissible after confirmation, including, without limitation, for the following purposes:

1. To determine the allowability, amount, classification, or priority of Claims upon objection by the Debtor, the Revested Debtor or the Post-Effective Date Board of Directors;

2. To construe and to take any action to execute and enforce the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Case on or before the Effective Date;

3. To rule on any and all applications for allowance of compensation and expense reimbursement of professionals for periods on or before the Effective Date;

4. To rule on any request for payment of any Administrative Claim or administrative expense;

5. To resolve any dispute regarding the implementation, execution, performance, consummation, or interpretation of the Plan;

6.      To resolve all applications, adversary proceedings, contested matters, and other litigated matters instituted on or before the Effective Date;

7.      To hear and determine any actions related to the Recovery Rights, including Recovery Rights Against Insiders, whether or not such actions are pending on the Effective Date;

8.      To determine such other matters and to perform other functions as may be provided in the Confirmation Order;

9.      To modify the Plan under section 1127 of the Bankruptcy Code, to remedy any apparent nonmaterial defect or omission in the Plan, or to reconcile any nonmaterial inconsistency in the Plan so as to carry out its intent and purposes, subject to consultation with the Committee and the provision of notice and opportunity for a hearing regarding any such modification;

10.     To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any entity;

11.     To issue such orders in aid of execution of the Plan and the Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any entity, to the full extent authorized by the Bankruptcy Code;

12.     To designate, if necessary, pursuant to Bankruptcy Rule 9001(5), an individual to act on behalf of the Debtor or the Revested Debtor after the Effective Date; and

13.     To enter a final decree closing the Case.

**12.     Modification of the Plan.**

The Debtor reserves the right, in accordance with the Code, to amend or modify the Plan prior to the Entry of the Confirmation Order, subject to consultation with the Committee and the provision of notice and opportunity for a hearing regarding any such modification.  After the Entry of the Confirmation Order, the Revested Debtor may, upon order of the Court, amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry

out the purpose and intent of the Plan, subject to consultation with the Committee and the provision of notice and opportunity for a hearing regarding any such modification.

As noted in the Introduction, Section I above, this Plan contemplated the liquidation of all of the Debtor's assets and the termination of the Debtor's business operations.  However, the Debtor has filed with the bankruptcy court an application to employ KPMG Corporate Finance, LLC ("KPMG") to provide investment banking services to the Debtor and, in particular, to attempt to develop, with the Debtor, a business restructuring plan which, in all likelihood, would involve the participation of a third-party investor.  As of this date, the Court has not yet approved the employment of KPMG and, accordingly, KPMG has not begun rendering services.  Nevertheless, the Debtor is reserving its right to amend this Plan to provide an alternative to liquidation, in the event that, through the services to be provided by KPMG, or otherwise, the Debtor is in a position to propose a feasible Plan that would involve continued and future business operations.

### 13.    Objections to Claims.

The Revested Debtor shall be responsible for, subject to consultation with, and the prior approval of, the Post-Effective Date Board of Directors for commencing, prosecuting or settling objections to Claims, including Administrative Claims and Administrative Expenses, not concluded as of the Effective Date.  All objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of such Claims by the later of (a) 120 days after the Effective Date, or (b) 120 days after the particular proof of claim has been filed, except as extended by an agreement between the claimant and the Revested Debtor, or by order of the Bankruptcy Court upon a motion filed by the Revested Debtor, with notice of such motion to be served upon the Office of the United States Trustee, the Post-Effective Date Board of Directors, Post-Effective Date Committee and those holders of Claims to whom the objection is made.  If an objection has not been filed to a proof of claim that relates to a Claim by the objection bar dates established in this Section, the Claim to which the proof of claim relates shall be treated as an Allowed Claim for purposes of distribution under the Plan.  The Post-Effective Date Committee shall have the authority to object to any Claims or actions asserted by any Insider or which is asserted against both the Debtor and any affiliate of the Debtor.

### 14.    Limitation of Liability.

Neither the Debtor/Revested Debtor, or any of its respective employees, officers, directors, partners, agents, representatives, or any professional persons employed by any of them, nor the Committee, the Post-Effective Date Board of Directors, the Post Effective Date Committee or any of their respective members, agents, representatives, attorneys, accountants, auditors or other advisors, shall have or shall incur any liability to any Person or entity for any act taken or omission made in good faith in connection with or related to the post-petition administration of the Debtor's case, including, but not limited to, the formulation, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created in connection with the Plan or regarding any distribution made under the Plan.

Pursuant to section 1125(e) of the Bankruptcy Code, the Debtor, the Committee and its present and former members, officers, directors, employees, agents, advisors, representatives, successors or assigns, and any Professionals (acting in such capacity) employed by any of the foregoing entities will neither have nor incur any liability for their role in soliciting acceptances or rejections of the Plan.

### 15.    Indemnification.

After the Effective Date, the Estate shall indemnify the Revested Debtor and the members of the Post-Effective Date Board of Directors and Post Effective Date Committee against any and all Claims, causes of action, losses, costs, damages, attorneys' fees and other expenses, each may sustain in carrying out their respective duties and obligations hereunder except those which arise as a result of gross negligence, fraud, breach of fiduciary duty or willful misconduct.

## V.

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES

### A.    Introduction.

The implementation of the Plan may have federal, state and local tax consequences to Debtor and Debtor's creditors and stockholders.  No tax opinion has been sought or will be obtained with respect to any tax consequences of the Plan.  This Disclosure Statement does not constitute and

1    is not intended to constitute either a tax opinion or tax advice to any person, and the summary

2    contained herein is provided for informational purposes only.

3            The discussion below summarizes only certain of the federal income tax

4    consequences associated with the Plan's implementation.  This discussion does not attempt to

5    comment on all aspects of the federal income tax consequences associated with the Plan, nor does it

6    attempt to consider various facts or limitations applicable to any particular creditor which may

7    modify or alter the consequences described herein.  A creditor may find that the tax consequences of

8    the Plan to such creditor differ materially from the tax consequences discussed below because of

9    such creditor's facts and circumstances.  This discussion does not address state, local or foreign tax

10   consequences or the consequences of any federal tax other than the federal income tax.

11           The following discussion is based upon the provisions of the Internal Revenue Code

12   of 1986, as amended (the "Internal Revenue Code"), the regulations promulgated thereunder,

13   existing judicial decisions and administrative rulings.  In light of the rapidly-changing nature of tax

14   law, no assurance can be given that legislative, judicial or administrative changes will not be

15   forthcoming that would affect the accuracy of the discussion below.  Any such changes could be

16   material and could be retroactive with respect to the transactions entered into or completed prior to

17   the enactment or promulgation thereof.  The tax consequences of certain aspects of the Plan are

18   uncertain due to the lack of applicable legal authority and may be subject to judicial or

19   administrative interpretations that differ from the discussion below.

20           **CREDITORS AND STOCKHOLDERS ARE ADVISED TO CONSULT WITH**

21   **THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM**

22   **AND TO DEBTOR OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN,**

23   **INCLUDING FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.**

24           **B.    Federal Income Tax Consequences to Debtor.**

25           The Debtor will recognize gain or loss on the disposition of each asset, but will not

26   likely be required to pay any regular federal corporate income taxes, because any gain from any such

27   sales will be sheltered by the Debtor's existing regular tax net operating losses and net operating loss

28   carryovers.

1        If the Debtor has a regular income tax loss in all tax years which include or follow the

2   Effective Date, it is likely the Debtor will not incur any federal alternative minimum tax liability.

3   However, in the event the Debtor has taxable income (before applying net operating loss carryovers)

4   in a tax year which includes or follows the Effective Date and must use its net operating loss

5   carryovers to shelter against regular federal corporate income tax liability, it is likely that the Debtor

6   will incur a federal alternative minimum tax liability because alternative tax net operating loss

7   carryovers cannot fully shelter against federal alternative minimum tax.  Under Internal Revenue

8   Code section 56(d), alternative tax net operating loss carryovers are deductible only to the extent of

9   90 percent of alternative minimum taxable income (computed without regard to such deduction).  At

10  the conclusion of the liquidation, the Debtor will be dissolved and should not owe any future taxes.

11  **C.    Federal Income Tax Consequences To Creditors**

12       The tax consequences of the Plan's implementation to a creditor will depend on

13  whether the creditor reports income on the cash or accrual method, whether the creditor receives

14  consideration in more than one tax year of the creditor, and whether all the consideration received by

15  the creditor is deemed to be received by that creditor in an integrated transaction.  Certain tax

16  consequences upon the receipt of cash or other property allocable to interest are discussed below

17  under "Receipt of Interest."

18  **1.    Consequences to Holders of Class 3 Allowed Claims (General Unsecured**

19  **Claims).**

20  **a.    Recognition of Gain or Loss Generally.**

21       Pursuant to the Plan, on the Effective Date, each Holder of an Allowed Class 3 Claim

22  will receive a right to receive payment from the Revested Debtor out of Net Estate Proceeds as

23  provided for in the Plan.  Except to the extent that the Holder of any such Allowed Class 3 Claim

24  agrees to a different treatment, said Holder will receive on account of its Allowed Class 3 Claim, in

25  full and complete satisfaction thereof, from Net Estate Proceeds, one or more pro rata distributions

26  of Net Estate Proceeds based upon the amount of the respective Holder's Allowed Class 3 Claim.

27  The change in the payment terms of the Allowed Class 3 Claims as originally held by the Holders

28

and the payment terms with respect to such Claims provided in the Plan likely constitutes a "significant modification" of such Claims under Treasury Regulations section 1.1001-3(e).  In general, assuming a significant modification occurs, each holder of an Allowed Class 3 Claim will recognize gain or loss in an amount equal to the difference between (i) the issue price (as determined under the Treasury Regulations) of the payment stream that such Holder will receive from Net Estate Proceeds in satisfaction of its Allowed Class 3 Claim (other than in respect of any Allowed Class 3 Claim for accrued but unpaid interest, and excluding any portion required to be treated as imputed interest or original issue discount), and (ii) such Holder's adjusted tax basis in its Allowed Class 3 Claim (other than any Allowed Class 3 Claim for accrued but unpaid interest).  Holders should consult with their tax advisors to determine whether any gain recognized under the foregoing rules may be reported on the installment method.

>    **2.**     **Other Tax Considerations.**

>    **a.**     **Market Discount.**

If a creditor has a lower tax basis in a Debtor obligation than its face amount, the difference may constitute market discount under section 1276 of the Internal Revenue Code. (Certain Debtor obligations are excluded from the operation of this rule, such as obligations with a fixed maturity date not exceeding one year from the date of issue, installment obligations to which Internal Revenue Code section 453B applies and, in all likelihood, demand instruments).

>    **b.**     **Withholding.**

All distributions to Holders of Allowed Claims are subject to any applicable tax withholding.  This may require payments by certain creditors of the required withholding tax on any non-cash consideration issued to them.  In addition, creditors may be required to provide general tax information to the Revested Debtor.

>    **3.**     **Receipt Of Interest**

Income attributable to accrued but unpaid interest will be treated as ordinary income, regardless of whether the creditor's existing claims are capital assets in its hands.

A creditor who, under its accounting method, was not previously required to include in income accrued but unpaid interest attributable to existing claims, and who exchanges its interest claim for cash, or other property pursuant to the Plan, will be treated as receiving ordinary interest income to the extent of any consideration so received allocable to such interest, regardless of whether that creditor realizes an overall gain or loss as a result of the exchange of its existing claims. A creditor who had previously included in income accrued but unpaid interest attributable to its existing claims will recognize a loss to the extent such accrued but unpaid interest is not satisfied in full. For purposes of the above discussion, "accrued" interest means interest, which was accrued while the underlying claim was held by the creditor. The extent to which consideration distributable under the Plan is allocable to such interest is uncertain.

## VI.

### VOTING AND PLAN CONFIRMATION STANDARDS

**A.**    **Voting On The Plan.**

After carefully reviewing the Plan and this Disclosure Statement, including the Exhibits hereto, each holder of a claim Class 3 Claim should mark its vote on the enclosed ballot ("Ballot") and timely return it in the envelope provided.

**TO BE COUNTED, YOUR BALLOT MUST BE COMPLETELY FILLED IN, SIGNED AND TRANSMITTED IN THE MANNER SPECIFIED IN THE BALLOT SO THAT IT IS <u>RECEIVED</u> BY JOANNE STERN, STUTMAN, TREISTER & GLATT PROFESSIONAL CORPORATION, 1901 AVENUE OF THE STARS, SUITE 1200, LOS ANGELES, CALIFORNIA 90067 <u>ON OR BEFORE</u> THE VOTING DEADLINE OF _____ AS SPECIFIED IN THE BALLOT.**

**1.**    **Classes Entitled To Vote.**

Whether a holder of a claim is entitled to vote on the Plan depends on (a) the class in which the claim is classified and (b) whether that class is "impaired" under the Plan within the meaning of Bankruptcy Code section 1124. Article III of the Plan describes what claims or equity interests are classified in each class. Holders of Allowed Claims in Class 3 are entitled to vote on the Plan because that Class is impaired under the Plan within the meaning of Bankruptcy Code

section 1124.  Classes 1 (Secured Claims), 2 (Priority Claims) and 4 (Convenience Claims) are unimpaired and, therefore, do not vote.  Finally, Holders of Allowed Equity Interests in Class 5 are deemed to have rejected the Plan because their interests will receive no distribution under the Plan.

### a.   What Is an Allowed Claim/Interest.

As noted above, a creditor must first have <u>an allowed claim</u> to have the right to vote.  Generally, any proof of claim will be allowed, unless a party in interest brings a motion objecting to the claim.  When an objection to a claim is filed, the creditor  holding the claim cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes.

A creditor may have an allowed claim or interest even if a proof of claim or interest was not timely filed, if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim.

### b.   What Is an Impaired Claim.

As noted above, an allowed claim only has the right to vote if it is in a class that is <u>impaired</u> under the Plan.  A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.  For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, Class 3 is impaired and holders of claims in this Class are therefore entitled to vote to accept or reject the Plan.  Parties who dispute the Debtor's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Debtor has incorrectly characterized the Class.

### c.   Who is <u>Not</u> Entitled to Vote.

The following three types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8); (3) claims in Classes 1, 2, and 4, which are deemed to accept the Plan; and (4) interests in Class 5, which are deemed to have rejected the Plan.  Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code.  EVEN IF YOUR CLAIM IS

OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### d.    Votes Necessary to Confirm the Plan.

Because only one impaired class of claims exists, the Court cannot confirm the Plan unless Class 3 has voted to accept the Plan.

### e.    Votes Necessary for a Class to Accept the Plan.

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan.

### 2.    How To Vote.

Procedures for voting are specified in the Disclosure Statement Order (Exhibit "B" hereto) and the Confirmation Hearing Notice distributed with the Disclosure Statement in your solicitation package.  The deadline for voting on the Plan is _____, 2010.  Your ballot must be received by _____, 2010 or it will not be counted.

### B.    Confirmation Of The Plan.

Any interested party desiring further information about the plan should contact Joanne Stern, Legal Assistant, at (310) 228-5600.

### 1.    Hearing On Confirmation Of The Plan.

The Bankruptcy Court has set a hearing on _____, at _____.m., in the Courtroom of the Honorable Louise DeCarl Adler, United States Bankruptcy Judge, Courtroom 2, San Diego, California 92101, to determine whether the requirements for Confirmation of the Plan, including those set forth in section 1129 of the Bankruptcy Code, have been satisfied with respect to the Debtor.  Your attention is directed to the Disclosure Statement Order (Exhibit "B" hereto) and the Confirmation Hearing Notice distributed with the Disclosure Statement in your solicitation package.  Objections to Confirmation of the Plan must be served upon counsel to the Debtor by _____, 2010.

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan after the ballots have been cast.  The confirmation hearing

may be postponed from time to time by the Bankruptcy Court without further notice except for an announcement of the postponement made at the confirmation hearing.  Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan.  Objections must be made in writing, specifying in detail the name and address of the person or entity objecting, the grounds for the objection, and the nature and amount of the claim or equity interest held by the objector, and otherwise complying with the requirements of the Bankruptcy Rules and Local Bankruptcy Rules. Objections must be filed with the Clerk of the Bankruptcy Court, together with proof of service, and served upon the parties so designated in the notice in the manner set forth therein, on or before the time and date designated in the notice as being the last date for serving and filing objections to confirmation of the Plan.  **UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THE NOTICE, IT WILL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

At the confirmation hearing, the Bankruptcy Court will determine, among other things, whether the following confirmation requirements specified in section 1129 of the Bankruptcy Code have been satisfied:

1.    The Plan complies with the applicable provisions of the Bankruptcy Code.

2.    The Debtor has complied with the applicable provisions of the Bankruptcy Code.

3.    The Plan has been proposed in good faith and not by any means proscribed by law.

4.    Any payment made or promised by the Debtor for services or for costs and expenses in, or in connection with, the Case, or in connection with the Plan and incident to the Case, has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable or, if such payment is to be fixed after the confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable.

5.    Each holder of an impaired claim either has accepted the Plan or will receive or retain under the Plan on account of such holder's claims, property of a value, as of the distribution

date, that is not less than the amount that such entity would receive or retain if the Debtor was liquidated on such date under chapter 7 of the Bankruptcy Code.  See "Best Interests Test," infra.

6.    Each class of claims has either accepted the Plan or is not impaired under the Plan.  As to equity interests that are deemed to reject the Plan, see "Classification," infra.

7.    Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Plan provides that Allowed Administrative Claims and Allowed Priority Tax Claims will be paid in full on the Effective Date of the Plan.

8.    At least one class of claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a claim in such class.

9.    Confirmation of the Plan is not likely to be followed by the need for further financial reorganization or liquidation of the Debtor under the Plan, unless such reorganization or liquidation is proposed in the Plan.  See "Feasibility and Risk Factors," infra.

10.    All fees payable under section 1930 of title 28 as determined by the Court at the confirmation hearing have been paid or the Plan provides for payment of all such fees on the Effective Date.

11.    The Plan provides for the continuation after the Effective Date of payment of all retiree benefits, as such term is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to subsection 1114(e)(1)(B) or 1114(g) of the Bankruptcy Code.

The Debtor believes that, upon acceptance of the Plan by the class of claims entitled to vote, the Plan will satisfy all of the applicable statutory requirements of chapter 11 of the Bankruptcy Code, that the Debtor has complied or will have complied with all of the requirements of chapter 11, and that the Plan is being proposed and will be submitted to the Bankruptcy Court in good faith.

## C.    Feasibility and Risk Factors.

The Bankruptcy Code requires that a plan proponent demonstrate that the consummation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor, unless that liquidation is proposed in the Plan.  The feasibility test essentially requires the proponent demonstrate that it has sufficient ability to make the payments required under the Plan.

On the Effective Date, the Debtor will have sufficient cash on hand (see Section III.H.1, supra) to make payments to creditors on account of anticipated Administrative Expense Claims, Secured Claims (if any), Priority Tax Claims,  Priority Claims, Convenience Claims, and General Unsecured Claims.

Therefore, the Plan is feasible with respect to payment to be made to the holders of Administrative Claims, Secured Claims (if any), Priority Tax Claims, Priority Claims, Convenience Claims, and General Unsecured Claims.  The Debtor has demonstrated that it has sufficient ability to make the payments required under the Plan when necessary, and that the Plan is feasible.

**D.    Best Interests Of Creditors Test.**

Confirmation requires, among other things, that each holder of a claim in an impaired class and each holder of an interest either:  (i) accepts the Plan; or (ii) receives or retains under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code.  This requirement is commonly referred to as the "Best Interests Test".

To determine if the Plan is in the best interest of the one impaired class in the Plan, the present value of the distributions from the proceeds of the liquidation of the Debtor's assets and properties, after subtracting the amounts attributable to the foregoing claims, is then compared with the value of the property offered to each such class under the Plan.

Similar to a chapter 7 liquidation, the Plan provides for the orderly liquidation of the Debtor's remaining noncash assets such as the Tax Refunds, and for the distribution of the proceeds in accordance with the priority scheme established by the Bankruptcy Code and applicable law.

If this Case was converted to a chapter 7 liquidation, the primary difference would be that a trustee would be appointed by the Bankruptcy Court.  That trustee would liquidate the remaining assets of the Debtor's estate and distribute the proceeds in accordance with the priorities established under the Bankruptcy Code.

All administrative expenses of the chapter 7 case, including the trustee's fees (which can be as high as 3% of the total amount collected and disbursed) would have to be paid in full before payment of the unpaid administrative expenses from the prior chapter 11 Case.  Unpaid

Chapter 11 administrative expenses would, in turn, be paid in full before any distribution could be made to unsecured creditors. It is unusual for distributions to be made within one year of the appointment of a chapter 7 trustee in a case involving substantial assets or claims. In addition, the chapter 7 trustee would not have the expertise and familiarity with the Tax Refund Complaint, FDIC Claim Objection, or any other potential claim objections to assist in the litigation that will occur during the claims objection process.

Thus, in a chapter 7 liquidation, it is likely the total liquidation proceeds would be approximately the same, or possibly less. However, the administrative expenses associated with the chapter 7 case would very likely exceed the expenses that the Debtor projects will be incurred in the implementation of the Plan, and the distributions likely would be delayed longer than the distributions that will be made under the Plan. Therefore, the Debtor believes that the Plan satisfies the requirements of the "best interests" test and provides creditors at least as much present value as they would receive in a chapter 7 liquidation.

E.    Classification

In accordance with Bankruptcy Code section 1122, the Plan provides for the classification of four (4) classes of claims and one class of interests. Section 1122(a) permits a plan to place a claim or an interest in a particular class only if the claim or interest is substantially similar to the other claims or interests in that class. The Debtor believes that the classification of claims and interests under the Plan is appropriate and consistent with applicable law.

Since the equity interests in Class 5 under the Plan neither receive nor retain anything under the Plan, they are deemed to reject the Plan. The Bankruptcy Court may nevertheless confirm the Plan if all other requirements of section 1129(a) of the Bankruptcy Code are satisfied, and if the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect thereto.

1.    No Unfair Discrimination

This test applies to classes of claims or equity interests that are of equal priority and are receiving different treatment under a plan or reorganization. The test does not require that the

treatment be the same or equivalent, but that such treatment be "fair".  Since all of the classes of claims that are receiving payment under the Plan are senior in priority to the holders of allowed interests in Class 5, the Debtor believes that Class 5 is not treated in an unfair discriminatory manner. Moreover, no class of claims will receive payments or property with an aggregate value greater than the aggregate value of the allowed claims in such class.

### 2.      Fair And Equitable Test

The Bankruptcy Code establishes the "fair and equitable" test for holders of interests which provides that such holders must receive on the Effective Date property of a value equal to the greatest of the allowed amount of any fixed liquidation preference or redemption price to which the holder is entitled (or the value of such interest) or no holders of a junior interest may receive or retain anything under the Plan.  Since holders of Class 5 equity interests are neither entitled to a fixed liquidation preference nor a fixed redemption price, and since no holder of an interest junior to the holders of the Class 5 equity interests will receive or retain anything under the Plan, the Plan is fair and equitable as to Class 5.

## VII.

### ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN OF LIQUIDATION

The Debtor believes that the Plan affords holders of allowed claims the potential for a fair realization of the value of the Debtor's assets that is more than would be realized under a chapter 7 liquidation.  As discussed above, if no plan can be confirmed, the Debtor's case may be converted to a case under chapter 7 of the Bankruptcy Code, under which a trustee would be appointed to liquidate the Debtor's assets for distribution to creditors in accordance with the priorities established by the Bankruptcy Code.  A discussion of the effects that a chapter 7 liquidation would have on the recovery by holders of claims and interests is set forth above.  THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS PREFERABLE BECAUSE IT IS EXPECTED TO PROVIDE GREATER RECOVERIES AND INVOLVE LESS DELAY AND LOWER ADMINISTRATIVE COSTS.  ACCORDINGLY, THE DEBTOR URGES HOLDERS OF

1  CLASS 3 CLAIMS TO VOTE TO ACCEPT THE PLAN BY SO INDICATING ON THEIR

2  BALLOTS AND RETURNING THEM AS SPECIFIED IN THE NOTICE.

3  ### VIII.

4  ### RECOMMENDATION AND CONCLUSION

5        The Debtor believes that confirmation and implementation of the Plan is preferable to

6  any feasible alternatives, because the Plan will provide greater recoveries for the holders of Allowed

7  Claims in Class 3.  Accordingly, the Debtor urges Holders of impaired Claims in Class 3 to vote to

8  accept the Plan by so indicating on their Ballots and returning them as specified in this Disclosure

9  Statement and on the Ballots.

10

11  DATED:  October 4 , 2010                    IMPERIAL CAPITAL BANCORP, INC.

12

13

14

15  By:  Joseph W. Kiley, III
     Its: Chief Executive Officer

16

17  Submitted by:

18  Stutman, Treister & Glatt,
    Professional Corporation

19

20

21  By:_____  FOR

22  Gary E. Klausner, Esq.
    Reorganization Counsel

23  to Debtor and Debtor in Possession

24

25

26

27

28

544066v3

48

Exhibit "A"

1  GARY E. KLAUSNER (State Bar. No. 69077), and
   GREGORY K. JONES (State Bar. No. 181072) Members of
2  STUTMAN, TREISTER & GLATT
   PROFESSIONAL CORPORATION
3  1901 Avenue of the Stars, 12th Floor
   Los Angeles, California 90067
4  Telephone: (310) 228-5605
   Facsimile: (310) 228-5788
5
6  Reorganization Counsel for
   Debtor and Debtor in Possession
7  Debtor's Mailing Address:
8  888 Prospect Street, Suite 300
   Los Angeles, California 92037

9           **UNITED STATES BANKRUPTCY COURT**
            **SOUTHERN DISTRICT OF CALIFORNIA**
10

11 In re                              ) Case No. 09-19431-LA11
                                      )
12 IMPERIAL CAPITAL BANCORP, INC.,    ) Chapter 11
   a Delaware corporation,            )
13                                    )
                                      )
14                Debtor.             ) **CHAPTER 11 LIQUIDATING PLAN OF**
                                      ) **REORGANIZATION FOR DEBTOR**
15                                    ) **IMPERIAL CAPITAL BANCORP, INC., A**
                                      ) **DELAWARE CORPORATION DATED**
16 Tax Identification Number:         ) **OCTOBER 4, 2010**
                                      )
17 95-4596322                         )
                                      )
18                                    ) **Plan Confirmation Hearing**
                                      )
19                                    ) Date:  [To Be Set]
                                      ) Time:  [To Be Set]
20                                    ) Place: Courtroom 2, Room 118
                                      )        Jason Weinberger U.S. Courthouse.
21                                    )        325 West "F" Street
                                      )        San Diego, CA 92101-6991
22                                    )
                                      )
23                                    )

24
25
26
27
28

544016v6

# <u>TABLE OF CONTENTS</u>

**Page(s)**

ARTICLE I INTRODUCTION ..................................................................................................1

ARTICLE II DEFINITIONS AND RULES OF CONSTRUCTION............................................1

    A.    Specific Definitions. ...................................................................................1

    B.    Interpretation, Rules of Construction and Computation of Time ...........................7

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ........8

    A.    Unclassified Claims. ...................................................................................8

        1.    Administrative Claims. ....................................................................8

        2.    Priority Tax Claims...........................................................................9

        3.    Classified Claims And Interests.......................................................10

            a.    Class 1 (Secured Claims). ............................................. 10

            b.    Class 2 (Priority Claims)................................................ 10

            c.    Class 3 (General Unsecured Claims). ........................... 10

            d.    Class 4 (Convenience Claims). ..................................... 11

            e.    Class 5 (Holders Of Interests In The Debtor). ............................. 11

ARTICLE IV TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
    LEASES .....................................................................................................11

ARTICLE V MEANS OF IMPLEMENTATION .......................................................................12

    A.    Distributions and Actions on the Effective Date. ..................................................12

    B.    Liquidation Of Remaining Assets...........................................................................12

    C.    Post-Effective Date Board of Directors. .................................................................14

    D.    Distributions to Class 3.............................................................................................15

    E.    Maintenance of Bank Accounts. ..............................................................................16

    F.    Form of Distribution/Undeliverable Distributions..................................................16

    G.    Corporate Matters Regarding The Debtor. ..............................................................17

        1.    Cancellation Of Equity Interests........................................................17

|  |  |  |
|---|---|---|
| 2. | Dissolution Of Debtor. | 18 |
| 3. | Bylaws of the Revested Debtor | 18 |
| H. | Revesting Of Assets. | 18 |
| I. | Prosecution of Recovery Rights and Recovery Rights Against Insiders. | 18 |
| J. | Effect of Confirmation | 19 |
| K. | Nondischarge And Injunction. | 19 |
| 1. | Nondischarge Of Debtor. | 19 |
| 2. | Injunction. | 19 |
| L. | Exemption From Certain Transfer Taxes And Further Transactions. | 20 |
| M. | Corporate Action. | 20 |
| N. | Retention Of Jurisdiction. | 21 |
| O. | Successors And Assigns. | 22 |
| P. | Modification of the Plan. | 22 |
| Q. | Objections to Claims. | 23 |
| R. | Limitation of Liability | 24 |
| S. | Indemnification. | 24 |
| T. | Cramdown. | 24 |

ARTICLE VI MISCELLANEOUS .........................................................................25

ARTICLE VII CONFIRMATION REQUEST .......................................................26

# ARTICLE I

# INTRODUCTION

The Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (the "Code") on December 18, 2009,  and is managing its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Code. This document is the Chapter 11 Plan ("Plan") proposed by the Debtor (the "Plan Proponent"). Sent to you in the same envelope as this document is the Disclosure Statement which has been approved by the Bankruptcy Court, and which is provided to help you understand and evaluate the Plan.

This is a liquidating plan.  The Plan Proponent will make payments under the Plan by reducing all assets of the Estate to Cash, including, without limitation, by prosecuting any Recovery Rights and by having the Post-Effective Date Committee prosecute any Recovery Rights Against Insiders, and distributing the Cash to Creditors pursuant to the terms of this Plan. This Plan contemplates the liquidation of all of the Debtor's assets and the termination of all of the Debtor's business operations.

# ARTICLE II

# DEFINITIONS AND RULES OF CONSTRUCTION

**A.**    **Specific Definitions.**

In addition to such other terms as are defined in other sections hereof, the following terms shall have the following meanings:

1.        **"Administrative Claim"** means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Code and referred to in section 507(a)(l) of the Code, including compensation of and reimbursement of costs to Professionals, and all fees and charges assessed against the Debtor and the Estate under 28 U.S.C. section 1930.

2.        **"Allowed Administrative Claim"** means all or that portion of an Administrative Claim which is an Allowed Claim.

3.        **"Allowed Claim"** means that portion of a Claim which: (a) was scheduled by the Debtor pursuant to section 521 of the Code, other than a Claim scheduled as

disputed, contingent or unliquidated; (b) is set forth in a proof of claim which was timely filed with the Bankruptcy Court, and as to which no objection has been filed within the time provided by the Plan; or (c) if a proof of claim was timely filed and an objection to the proof of claim was filed, has been allowed by a Final Order.

4. **"Allowed Convenience Claim"** means all or a portion of a Convenience Claim which is an Allowed Claim.

5. **"Allowed Priority Claim"** means all or that portion of a Priority Claim which is an Allowed Claim.

6. **"Allowed Secured Claim"** means an Allowed Claim secured by a lien on any property of the Estate, but only to the extent of the value of the interest of the holder of such Allowed Claim in the interest of the Estate in such property, the calculation of which shall not include any demand for default interest, penalty interest or other similar demands.

7. **"Allowed Unsecured Claim"** means all or that portion of an Unsecured Claim which is an Allowed Claim.

8. **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of California, having jurisdiction over the Case and, to the extent of any reference made pursuant to section 157 of title 28 of the United States Code, the unit of such District Court pursuant to section 151 of title 28 of the United States Code; or, in the event such court ceases to exercise jurisdiction over the Case, such court or unit thereof that exercises jurisdiction over the Case in lieu thereof.

9. **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Bankruptcy Court, to the extent applicable to the Case, including all amendments thereto to the extent such amendments are applicable to the Case.

10. **"Business Day"** means any day except Saturday, Sunday or any day on which commercial banks in Los Angeles, California are authorized by law to close.

11. **"Case"** means the chapter 11 case under the Code, commenced by the Debtor on the Petition Date.

12. **"Cash"** means lawful currency of the United States of America and its equivalents or a check issued by the Debtor or Revested Debtor.

13. **"Claim"** means the term as defined in section 101(5) of the Code.

14. **"Class"** means a group of Claims or Interests classified together in a class designated in Article III of the Plan.

15. **"Code"** means the Bankruptcy Code, as codified in Title 11 of the United States Code, 11 U.S.C. § 101 *et seq*., including all amendments thereto to the extent such amendments are applicable to the Case.

16. **"Committee"** means the Official Committee of General Unsecured Creditors appointed by the Office of the United States Trustee in the Case, as it may be constituted from time to time.

17. **"Committee Designee"** means any individual designated by the Committee.

18. **"Confirmation Date"** means the date of Entry of the Confirmation Order.

19. **"Confirmation Hearing"** means the hearing before the Bankruptcy Court to be held in accordance with section 1128(a) of the Code.

20. **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Code.

21. **"Convenience Claim"** means any Unsecured Claim that is (i) an Allowed Claim for an amount of $10,000 or less or (ii) is an Allowed Claim in an amount greater than $10,000, but which is reduced to $10,000 by election of the holder thereof pursuant to such holder's ballot. In no event shall any Convenience Claim exceed $10,000 for the purposes of allowance, treatment or distribution under this Plan.

22. **"Creditor"** means any person that is the holder of a Claim.

23. **"Debtor"** means Imperial Capital Bancorp, Inc., a Delaware corporation, whether as a debtor or as a debtor in possession.

24. **"Disclosure Statement"** means the **DISCLOSURE STATEMENT RE CHAPTER 11 LIQUIDATING PLAN OF REORGANIZATION FOR DEBTOR**

3

1    **IMPERIAL CAPITAL BANCORP, INC., A DELAWARE CORPORATION DATED**

2    **OCTOBER 4, 2010** (and all annexes attached thereto or referenced therein) that relates to this

3    Plan and is approved pursuant to section 1125 of the Code in an Order Entered by the

4    Bankruptcy Court, as such Disclosure Statement may be amended, modified or supplemented.

5         25.    **"Disputed Claim"** means any Claim which is not an Allowed Claim.

6         26.    **"Effective Date"** means the date selected by the Debtor that is no more

7    than ten (10) Business Days following the date the Confirmation Order becomes a Final Order.

8         27.    **"Entered"** or **"Entry"** means the recording on the Bankruptcy Court

9    docket for the Case by the clerk of the Bankruptcy Court.

10        28.    **"Estate"** means, with respect to the Debtor, the estate created by section

11   541(a) of the Code on the Petition Date.

12        29.    **"Final Order"** means an order or judgment entered by the Court or any

13   other court exercising jurisdiction over the subject matter and the parties (i) that has not been

14   reversed, stayed, modified or amended; (ii) as to which no appeal, certiorari proceeding,

15   reargument, or other review or rehearing has been requested or is still pending; and (iii) as to

16   which the time for filing a notice of appeal or petition for certiorari shall have expired.

17   Notwithstanding, and in lieu of the foregoing, with respect to the Confirmation Order, Final

18   Order means an order or judgment of the Bankruptcy Court with respect to which no stay

19   pending appeal is in effect.

20        30.    **"Initial Distribution Date"** means the first Business Day on which a

21   distribution is made under the Plan to holders of Class 3 Allowed Claims.

22        31.    **"Insider"** means the term as defined in section 101(31) of the Code.

23        32.    **"Interests"** means any equity interests, ownership rights, or shares in the

24   Debtor (including, without limitation, all capital stock, stock certificates, common stock,

25   preferred stock, partnership interests, membership and other interests in a limited liability

26   company, rights, options, warrants, contingent warrants, convertible or exchangeable securities,

27   investment securities, subscriptions or other agreements and contractual rights to acquire or

28   obtain such an interest or share in the Debtor, partnership interests in the Debtor's stock

appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights and liquidation preferences, puts, calls or commitments of any character whatsoever relating to any such equity, ownership interests or shares of capital stock of the Debtor or obligating the Debtor to issue, transfer or sell any shares of capital stock) whether or not certificated, transferable, voting or denominated "stock" or a similar security, and any Claim or Cause of Action relating to or arising from any of the foregoing.

33.     **Net Estate Proceeds"** means the Cash held by the Estate on the Effective Date plus the proceeds received by the Estate from the liquidation of the assets of the Estate after the Effective Date, less payment of and reserves for: (i) all costs of liquidating the assets of the Estate; (ii) all Allowed Secured Claims; (iii) all Allowed Administrative Claims; (iv) all Allowed Tax Claims; (v) all Allowed Priority Claims; (vi) all Allowed Convenience Claims; and (vii) compensation to, and expenses of, the Revested Debtor, the Post-Effective Date Board of Directors, and the Post-Effective Date Committee**,** including, counsel for the same.

34.     **Person"** means an individual, partnership or corporation and such other entities as defined and described in section 101(41) of the Code.

35.     **Petition Date"** means December 18, 2009.

36.     **Plan"** means this **CHAPTER 11 LIQUIDATING PLAN OF REORGANIZATION FOR DEBTOR IMPERIAL CAPITAL BANCORP, INC., A DELAWARE CORPORATION** (including all exhibits hereto), as modified or amended from time to time.

37.     **Post-Effective Date"** means the time period after the Effective Date.

38.     **Post-Effective Date Committee"** means the Committee after the Effective Date, which shall consist of the members of the Committee prior to the Effective Date as may be reconstituted from time to time.

39.     **Post-Effective Date Board of Directors"** means the board of directors established pursuant to Article V, Section C of the Plan.

40.     **Priority Claim"** means a Claim other than an Administrative Claim or a Tax Claim which, if allowed, would be entitled to priority under section 507(a) of the Code.

41.     **<u>Professionals</u>** means those Persons or entities (a) employed in the Case under sections 327 or 1103 of the Code, and (b) entitled, under sections 330, 503(b), 506(b), or 507(a)(1) of the Code, to seek compensation for legal, accounting or other professional services and the costs and expenses related to such services from the Debtor or the Estate.

42.     **<u>Recovery Rights</u>** means any and all causes of action, Claims, obligations, suits, debts, judgments, demands, whether at law or in equity, including, without limitation, all rights and causes of action under sections 510, and 541 through 558, inclusive, of the Code, and whether or not brought as of or after the Effective Date, which are the property of the Debtor or the Estate, including any pending or future actions against the Federal Deposit Insurance Corporation in its capacity as receiver of Imperial Capital Bank or otherwise.

43.     **<u>Recovery Rights Against Insiders</u>** means all Recovery Rights against any Insider of the Debtor.

44.     **<u>Revested Debtor</u>** means the Debtor after the Effective Date of the Plan during which time it shall continue the liquidation process as contemplated by the Plan and perform all functions traditionally performed by a liquidating agent.

45.     **<u>Secured Claim</u>** means a Claim secured by a lien on any property of the Estate.

46.     **<u>Tax Claim</u>** means a Claim entitled to priority under section 507(a)(8) of the Code.

47.     **<u>Trust Claims</u>** means the Unsecured Claims held by holders of the preferred securities issued by five trusts created by the Debtor from September 2000 to December 2002, and consisting of the ITLA Capital Statutory Trust I, ITLA Capital Statutory Trust II, ITLA Capital Statutory Trust III, ITLA Capital Statutory Trust IV and ITLA Capital Statutory Trust V.

48.     **<u>Unsecured Claim</u>** means any Claim of a Creditor against the Debtor, however arising, which is not an Administrative, Tax, Priority or Secured Claim.

**B.    Interpretation, Rules of Construction and Computation of Time**

1.    Any capitalized term used in this Plan that is not defined herein, or in other exhibits hereto, but that is defined and used in the Disclosure Statement has the meaning ascribed to that term in the Disclosure Statement.

2.    Any term used in this Plan that is not defined herein or in the Disclosure Statement, whether in this Article II or elsewhere, or other exhibits hereto, but that is used in the Code or the Bankruptcy Rules has the meaning ascribed to that term in (and shall be construed in accordance with the rules of construction under) the Code or the Bankruptcy Rules.

3.    The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to this Plan as a whole and not to any particular article, section, subsection or clause contained in this Plan.

4.    Unless specified otherwise in a particular reference, a reference in this Plan to an article or a section is a reference to that article or section of this Plan.

5.    Any reference in this Plan to a document being in a particular form or on particular terms and conditions means that the document shall be substantially in such form or substantially on such terms and conditions.

6.    Any reference in this Plan to an existing document means such document, as it may have been amended, modified or supplemented from time to time as of the Effective Date.

7.    Whenever from the context it is appropriate, each term stated in either the singular or the plural shall include both the singular and the plural.

8.    Except as otherwise provided herein, the rules of construction set forth in section 102 of the Code shall apply to this Plan.

9.    In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

10.    All exhibits to this Plan are incorporated into this Plan, and shall be deemed to be included in this Plan, regardless of when filed with the Bankruptcy Court.

11.    The provisions of the Plan shall control over the contents of the Disclosure Statement.  The provisions of the Confirmation Order shall control over the contents of the Plan.

12.    Whenever a distribution of property is required to be made on a particular date, the distribution shall be made on such date, or as soon as practicable thereafter.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

As required by the Code, the Plan classifies Claims and Interests in various Classes according to their right to priority of payments as provided in the Code.  The Plan states whether each Class of Claims or Interests is impaired or unimpaired.  The Plan provides the treatment each Class will receive under the Plan.

A.    **Unclassified Claims.**

Certain types of Claims are not placed into voting Classes; instead they are unclassified.  They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Code.  As such, the Proponent has not placed the following Claims in a Class.  The treatment of these Claims is provided below.

1.    **Administrative Claims.**

a.    **Treatment.**  Unless otherwise agreed to by the parties, each holder of an Allowed Administrative Claim shall receive Cash equal to the unpaid portion of such Allowed Administrative Claim on the later of (x) the Effective Date, (y) the date a Final Order of the Bankruptcy Court is Entered allowing the Administrative Claim, and (z) a date agreed on by the Debtor and the holder of the Allowed Administrative Claim.

b.    **Bar Date For Administrative Claims**.  All applications, including final applications, for compensation of Professionals for services rendered and for reimbursement of expenses incurred on or before the Effective Date, and any other request for compensation by any Person or entity for making a substantial contribution in the Case, and all other requests for payment of an Administrative Claim incurred before the Effective Date under

1  sections 507(a)(1) or 507(b) of the Code (except only for Claims under 28 U.S.C. section 1930)

2  shall be filed no later than sixty (60) days after the Confirmation Date.

3          As to other administrative expenses that do not require Bankruptcy Court

4  approval to become Allowed Claims, Creditors shall submit such Claims to the Debtor no later

5  than sixty (60) days after the Confirmation Date or by such other bar date as the Bankruptcy

6  Court may set.  Holders of claims for the provision of goods and services postpetition to the

7  Debtor need not file proofs of claim for administrative expenses.

8          Any such Claim not filed or submitted as explained above within these deadlines

9  shall be forever barred, and any Creditor who is required to file a request for payment of such

10  Claim and who does not file such request by the applicable bar date shall be forever barred from

11  asserting such Claim against the Estate or its property.

12          U.S. Bank, N.A and The Bank of  New York Mellon, indenture trustees for the

13  trust preferred securities that form the basis for the Trust Claims has provided and will continue

14  to provide necessary services postpetition to the holders of the Trust Claims.  All reasonable fees

15  and expenses of the indenture trustee (including the fees and expenses of professionals employed

16  by the indenture trustee) that are incurred in connection with the Case shall be deemed to be

17  allowed administrative expenses, and any such fees and expenses due and payable and not paid

18  as of the Effective Date shall be paid on the Effective Date; provided however that to the extent

19  such fees and expenses are due and payable after the Effective Date, such fees and expenses shall

20  be paid no later then ten (10) days after the applicable invoice date.  The indenture trustee and its

21  professionals shall not be required to file any application with or obtain approval of the

22  Bankruptcy in order to receive payment of the fees and expenses.  The indenture trustee shall be

23  entitled to reasonable fees and expenses incurred in the implementation of the Plan, including

24  with any such fees and expenses incurred in connection with distributions made under the Plan.

25              **2.     Priority Tax Claims.**

26          Unless otherwise agreed to by the parties, each holder of an Allowed Tax Claim

27  shall receive Cash equal to the amount of the Allowed Tax Claim on the later of (x) the Effective

28  Date, and (y) the date an Order of the Bankruptcy Court is Entered allowing the Tax Claim.

Holders of Tax Claims shall not be entitled to receive any payment on account of interest that accrued after the Petition Date on, or penalties with respect to or arising in connection with, such Tax Claims, except as specifically allowed by the Bankruptcy Court.

### 3.    Classified Claims And Interests.

#### a.    Class 1 (Secured Claims).

Class 1 consists of all Secured Claims.  Unless otherwise agreed to by the parties, each holder of an Allowed Secured Claim shall receive on the later of (x) the Effective Date, and (y) the date an Order of the Bankruptcy Court is Entered allowing the Secured Claim, on account of and in full satisfaction of its Allowed Secured Claim, either of the following treatments at the sole election of the Debtor, (i) Cash equal to the amount of the Allowed Secured Claim or (ii) possession of the property in which the holder of the Allowed Secured Claim has a perfected, unavoidable and enforceable lien, security interest or other charge and relief from the automatic stay provided by section 362 of the Bankruptcy Code to foreclose, collect upon or setoff the property in accordance with applicable non-bankruptcy law; provided, however that any time after the Confirmation Date, the Debtor can elect to give to the holder of an Allowed Secured Claim the treatment provided in subparagraph (ii) above.  Class 1 is unimpaired under the Plan and the holders of Class 1 Allowed Claims are deemed to accept the Plan.  The Debtor does not believe that there are any Secured Claims in this Case.

#### b.    Class 2 (Priority Claims).

Class 2 consists of all Priority Claims.  Unless otherwise agreed to by the parties, each holder of an Allowed Priority Claim shall receive Cash equal to the amount of the Allowed Priority Claim on the later of (x) the Effective Date, and (y) the date an Order of the Bankruptcy Court is Entered allowing the Priority Claim.  Class 2 is not impaired under the Plan and holders of Class 2 Allowed Claims are deemed to accept the Plan.

#### c.    Class 3 (General Unsecured Claims).

Class 3 consists of all Unsecured Claims against the Debtor which are not included in any other Class in the Plan or otherwise provided for in the Plan, including the Trust Claims.  Each holder of an Allowed Unsecured Claim shall receive, on account of and in full

satisfaction of its Allowed Unsecured Claim, its pro-rata share of the Net Estate Proceeds. Distributions to holders of Class 3 Claims shall be governed by Article V, Section D. of the Plan. Class 3 is impaired under the Plan and holders of Class 3 Allowed Claims are entitled to vote to accept or reject the Plan.

### d.    Class 4 (Convenience Claims).

Class 4 consists of Convenience Claims.  Each holder of an Allowed Convenience Claim shall receive, on account of and in full satisfaction of its Allowed Convenience Claim and any Unsecured Claim reduced to a Convenience Claim, Cash equal to 100% of the amount of the Allowed Convenience Claim on the later of (x) the Effective Date, and (y) the date an Order of the Bankruptcy Court is Entered allowing the Convenience Claim.  Class 4 is unimpaired under the Plan and the holders of Class 4 Allowed Claims are deemed to accept the Plan.

### e.    Class 5 (Holders Of Interests In The Debtor).

Class 5 is comprised of holders of Interests in the Debtor.  Holders of Class 5 Allowed Interests shall neither receive nor retain any property under the Plan and all Interests of the Debtor shall be cancelled as of the Effective Date.  Class 5 is impaired under the Plan and the holders of Allowed Class 5 Interests are deemed to reject the Plan.

## ARTICLE IV

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All executory contracts or unexpired leases of the Debtor, except (a) those previously assumed and assigned by Bankruptcy Court order, or (b) those which are assumed under the Plan are rejected.  The Debtor shall file a schedule of executory contracts to be assumed under the Plan no later than 20 days prior to the Confirmation Hearing.

Any Claims arising from the rejection of an executory contract or unexpired lease as a result of confirmation of the Plan shall be filed with the Bankruptcy Court and served on the Revested Debtor, and its counsel, no later than <u>thirty (30)</u> days after the Confirmation Date.

# ARTICLE V

## MEANS OF IMPLEMENTATION

**A.     Distributions and Actions on the Effective Date.**

On the Effective Date, or as soon thereafter as practicable, and in accordance with the terms of the Plan:

1.     The Debtor shall make the required payments to the holders of Allowed Administrative Claims, Allowed Tax Claims, Allowed Class 1 Claims, Allowed Class 2 Claims and Allowed Class 4 Claims.

2.     The Revested Debtor shall administer all remaining property and assets, other than the Recovery Rights Against Insiders which shall be administered by the Post-Effective Date Committee, and distribute the proceeds thereof and the proceeds received from any Recovery Rights Against Insiders in accordance with the terms of the Plan.

3.     The Revested Debtor shall prosecute and administer the Recovery Rights but not the Recovery Rights Against Insiders which shall be the sole province of the Post-Effective Date Committee.

4.     On the Effective Date, the Post-Effective Date Committee shall have standing to and shall  prosecute and administer the Recovery Rights Against Insiders as the Post-Effective Date Committee deems appropriate, in its sole discretion.

**B.     Liquidation Of Remaining Assets.**

1.     On and after the Effective Date, the Revested Debtor shall liquidate and administer all the assets and other property of the Estate, including the Recovery Rights, but excluding the Recovery Rights Against Insiders, which shall be the sole province of the Post-Effective Date Committee, in accordance with the terms of the Plan.  All the assets and other property of the Estate, including the Recovery Rights, but excluding the Recovery Rights Against Insiders, which shall be the sole province of the Post-Effective Date Committee, shall be reduced to Cash or abandoned if determined by the Revested Debtor to have no reasonably expected material value in excess of the expenses required to liquidate such assets, considering, among other things, the risk, delay and uncertainty attendant with such liquidation.  The Net

Estate Proceeds will be distributed to holders of Class 3 Allowed Claims in accordance with the terms of the Plan.

2. The Revested Debtor will be responsible for paying any quarterly United States Trustee fees that accrue after the Effective Date.

3. The Revested Debtor shall be authorized, without any supervision or approval of the Bankruptcy Court or the Office of the United States Trustee, after notice to and subject to approval by the Post-Effective Date Board of Directors, to employ and compensate such persons, including counsel and accountants, as it may deem necessary to enable it to perform its functions hereunder, and the fees and costs of such employment and other expenditures shall be paid from Estate assets; subject to Article V, Section B.5. below.

4. The Post-Effective Date Committee shall be authorized, without any supervision or approval of the Bankruptcy Court or the Office of the United States Trustee, after notice to the Post-Effective Date Board of Directors, to employ and compensate such persons, including counsel and accountants, as it may deem necessary to enable it to perform its functions hereunder, and the fees and costs of such employment and other expenditures shall be paid from Estate assets; subject to Article V, Section B.5. below.

5. Professionals employed by the Revested Debtor and the Post-Effective Date Committee shall send monthly fee statements to the Revested Debtor and the Post-Effective Date Committee. In the event the Revested Debtor determines that a monthly fee statement of a Post-Effective Date Committee professional is unreasonable, the Revested Debtor will attempt to resolve such dispute with the Post-Effective Date Committee and the subject professional. In the event the Post-Effective Date Committee determines that a monthly fee statement of a Revested Debtor professional is unreasonable, the Post-Effective Date Committee will attempt to resolve such dispute with the Revested Debtor and the subject professional. If the parties are unable to resolved such dispute after a 30 day period, the dispute will be brought before the Bankruptcy Court for resolution.

6.      Pursuant to the Confirmation Order, on the Effective Date, the Post-Effective Date Committee shall have standing to prosecute and administer all Recovery Rights Against Insiders in its sole discretion.

**C.      Post-Effective Date Board of Directors.**

1.      On the Effective Date, the Post-Effective Date Board of Directors shall be established with four (4) members, two (2) of whom shall be appointed by the Committee and the other by the Revested Debtor. All final actions to be taken by the Debtor or the Revested Debtor with respect to the assets of the Estate, including compromising, settling or abandoning any actions related to the Recovery Rights (other than Recovery Rights Against Insiders) or claims objections, shall be done after consultation with and the consent of the Post-Effective Date Board of Directors.

2.      The Revested Debtor will provide the Post-Effective Date Board of Directors with quarterly reports concerning the status of funds held by the Estate, the status of Claims and objections to Claims, ongoing activities with respect to Recovery Rights and the date of any proposed distributions.  In addition, the Revested Debtor shall give the Post-Effective Date Board of Directors at least thirty (30) days written notification of the date of the Final Distribution (as such term is defined below).

3.      Each Member of the Post-Effective Date Board of Directors that is neither an employee nor an officer of the Revested Debtor shall receive as compensation for his or her services the sum of $2,500 per quarter and shall be entitled to receive reimbursement for all reasonable costs and expenses incurred in carrying out his or her duties.  The Post-Effective Date Board of Directors shall be entitled to retain and consult with professionals as may be deemed necessary by the Post-Effective Date Board of Directors to carry out its responsibilities under the terms of the Plan.

4.      Members of the Post-Effective Date Board of Directors may resign at any time upon written notice to the other members of the Post-Effective Date Board of Directors. Any vacancy on the Post-Effective Date Board of Directors will be filled by the Committee Designee  if the member appointed by the Committee resigns, or by the Revested Debtor if one

of its two members resign.  The failure to fill a vacancy however shall have no effect on the Post-Effective Date Board of Directors' authority under the Plan.

**D.      Distributions to Class 3.**

1.      As soon as is practicable after the Effective Date, the Revested Debtor shall make a Cash interim distribution (the "Interim Distribution") from the Estate pursuant to the terms of the Plan to the holders of Allowed Claims in Class 3; provided that if in the opinion of the Revested Debtor and the Post-Effective Date Board of Directors such distribution would be de minimis or impracticable in comparison to the time and costs involved in making an Interim Distribution, then the Interim Distribution may be postponed until such time as there are sufficient funds in the Estate.

2.      The Interim Distribution shall consist of the funds on hand in the Estate at the time such Interim Distribution is made, less a reserve (the "Reserve") estimated by the Post-Effective Date Board of Directors in good faith for current and prospective fees, costs and expenses of Post-Effective Date activities (including those of the Post-Effective Date Committee ), for unpaid Administrative Claims and administrative expenses and for Disputed Claims.  The Interim Distribution shall be made pro rata to all holders of Class 3 Allowed Claims.

3.      After an Interim Distribution has been made and a Reserve estimated, at such time as a Claim that has been included in the Reserve becomes an Allowed Claim, an amount necessary to make the Interim Distribution on account of such Allowed Claim (without any interest thereon) shall be paid to the holder of such Allowed Claim by the Revested Debtor within thirty (30) days after the Order allowing such Claim becomes a Final Order.

4.      Except for the Final Distribution (as defined below), subsequent distributions shall be made in the discretion of the Post-Effective Date Board of Directors, based upon funds available for distribution and the time and costs involved in making any such subsequent distribution.  Any such subsequent distributions shall be made in accordance with paragraphs (1), (2) and (3) above.

5.      At such time as all actions relating to the Recovery Rights and Recovery Rights Against Insiders have been completed, settled or abandoned and all other assets liquidated

15

to Cash or abandoned, the Revested Debtor shall make a final distribution (the "Final Distribution") of all funds on hand in the Estate, after payment of any remaining costs, expenses and fees of the Estate, pro rata to holders of Class 3 Allowed Claims pursuant to the terms of the Plan.

6.    No distribution, whether an Interim Distribution or Final Distribution, in an amount less than $1.00 shall be required to be made.

**E.    Maintenance of Bank Accounts.**

All Cash held by the Estate on the Effective Date plus the proceeds received by the Estate from the liquidation of the assets of the Estate after the Effective Date shall be held in one or more separate bank or other depository accounts or investment accounts, in accordance with section 345 of the Bankruptcy Code.  The Revested Debtor shall be entitled to use the Debtor's bank accounts that are in existence as of the Effective Date and shall be authorized to open such other bank or depository accounts as may be necessary or appropriate in its discretion to enable it to carry out the provisions of the Plan.  The Revested Debtor may, from time to time, invest Cash held by the Estate on the Effective Date plus the proceeds received by the Estate from the liquidation of the assets of the Estate in certificates of deposit, treasury bills, money market accounts or other short term investments, consistent with section 345 of the Bankruptcy Code.  All interest earned thereon shall be retained for distribution to the holders of Allowed Claims in Class 3 pursuant to the Plan.

**F.    Form of Distribution/Undeliverable Distributions.**

1.    All distributions under the Plan shall be made by check mailed by first-class mail through the United States mail, with postage fully prepaid, or by wire transfer. Distributions are deemed made under the Plan on the date of the mailing of the checks or the wiring of funds.  Distributions returned by the Post Office or undelivered due to lack of a current address or for any other reason shall be retained by the Revested Debtor for a period of six (6) months following their return unless claimed by the claimant within that time period.

544016v6

16

2.      During the six (6) month period following any distribution, a claimant may retrieve any returned distribution upon presentation to the Revested Debtor of satisfactory proof that such holder is entitled to such distribution.

3.      After the expiration of six (6) months following the date a distribution is made, holders of Allowed Claims entitled to returned distributions shall no longer be entitled thereto, and such Allowed Claims shall be deemed disallowed without further Court order. Thereafter, any unclaimed distributions shall be held in the Estate for distribution to holders of Allowed Claims at the time of the Final Distribution.

4.      No provision contained in this Section F or in the Plan shall be interpreted to require the Debtor, the Revested Debtor, the Post-Effective Date Board of Directors or the Post-Effective Date Committee to attempt to locate any such person.  The address shown on the Debtor's schedules for a creditor, if such creditor has not filed a proof of claim, or on such creditor's proof of claim filed with the Court shall be deemed to be a creditor's address for purposes of distributions hereunder unless at least seven (7) days prior to any distribution a written change of address is delivered to the Revested Debtor or counsel for the Revested Debtor.

**G.      Corporate Matters Regarding The Debtor.**

**1.      Cancellation Of Equity Interests.**

On the Effective Date, all Interests shall be cancelled and be of no further force or effect, without any further action being required to effect such cancellation.  Concurrently with the cancellation of the Interests as required in this section, the Debtor will issue one share of new common stock.  This new share of stock will be held by the Committee Designee for the benefit of all entities holding Allowed Unsecured Claims.  Once the Final Distribution date has occurred and the Court has Entered a Final Order closing this Case, this new share of stock will automatically be cancelled without any further action.  The members of the Post-Effective Date Board of Directors shall not be replaced by the holder of the share of stock until all assets of the Revested Debtor and the Estate have been liquidated, including the Recovery Rights, but excluding the Recovery Rights Against Insiders.

**2.     Dissolution Of Debtor.**

On the date that both the Final Distribution has occurred and the Court has Entered a Final Order closing this Case, the Debtor/Revested Debtor shall be dissolved as a Delaware corporation, without any further action being required to effect such dissolution.  The Debtor/Revested Debtor is authorized to file a certificate of dissolution with the Delaware Secretary of State.  As of the Effective Date, the Debtor, as the Revested Debtor, will continue to be governed as a Delaware corporation in accordance with this Plan.

**3.     Bylaws of the Revested Debtor.**

On the Effective Date, the bylaws of the Debtor shall be deemed to be amended to authorize the Post-Effective Date Board of Directors.

**H.     Revesting Of Assets.**

Pending the dissolution of the Debtor, the Debtor shall continue to exist after the Effective Date as a separate corporate entity, the Revested Debtor, with all the powers of a corporation under applicable law.

**I.     Prosecution of Recovery Rights and Recovery Rights Against Insiders.**

1.     The Revested Debtor shall have full power and authority, to be exercised subject to consultation with, and the prior approval of, the Post-Effective Date Board of Directors to commence, if not already commenced, prosecute, settle and abandon any action related to the Recovery Rights but not as to Recovery Rights Against Insiders, subject to consultation rights of the Post-Effective Date Committee.  After the Effective Date, all actions relating to the Recovery Rights shall be filed and prosecuted in the name of the Revested Debtor. Any counsel retained to prosecute Recovery Rights prior to the date the Confirmation Order becomes a Final Order shall not be disqualified from being retained by the Revested Debtor on the same terms and conditions of its prior employment solely by reason of that prior employment.

2.     The Post-Effective Date Committee shall have standing and full power and authority, either in its name, the Revested Debtor's name or both, in its sole discretion to commence, if not already commenced, prosecute, and abandon any action related to Recovery

1   Rights Against Insiders.  All settlements of Recovery Rights Against Insiders shall be approved

2   by the Bankruptcy Court after notice and a hearing.  Post-Effective Date Committee shall be

3   authorized to retain counsel to prosecute these actions.  Any counsel retained to prosecute

4   Recovery Rights Against Insiders prior to the date the Confirmation Order becomes a Final

5   Order shall not be disqualified from being retained by the Post-Effective Date Committee on the

6   same terms and conditions of its prior employment solely by reason of that prior employment.

7        **J.       Effect of Confirmation**

8              On the Confirmation Date, the provisions of the Plan shall be binding on the

9   Debtor, the Revested Debtor, the Estate, all holders of Claims against or Interests in the Debtor,

10  and all other parties in interest whether or not such holders are impaired and whether or not such

11  holders have accepted the Plan.

12       **K.       Nondischarge And Injunction.**

13              **1.       Nondischarge Of Debtor.**

14              Pursuant to section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order

15  shall not discharge Claims against the Debtor.  However, no creditor of the Debtor or holder of

16  an Interest may receive any payment from or seek recourse against any assets that are to be

17  distributed under this Plan**,** except for those assets required to be distributed to that Creditor as

18  expressly provided for in this Plan.  As of the Effective Date, all entities are precluded from

19  asserting against the Debtor, the Revested Debtor, or any property that is to be distributed under

20  this Plan any Claims, rights, causes of action, liabilities or Interests based upon or related to any

21  act or omission, transaction or other activity of any kind or nature that occurred prior to the

22  Effective Date, other than as expressly provided in this Plan or the Confirmation Order,

23  regardless of the filing, lack of filing, allowance or disallowance of such a Claim or Interest and

24  regardless of whether such an entity has voted or not voted to accept or reject this Plan.

25              **2.       Injunction.**

26              Except as otherwise provided in the Plan or the Confirmation Order, on and after

27  the Effective Date all entities that have held, currently hold or may hold a debt, claim, other

28  liability or interest against or in the Debtor that would be discharged upon confirmation of this

1  Plan and the Effective Date but for the provisions of section 1141(d)(3) of the Bankruptcy Code

2  and Section K.1. hereof are permanently enjoined from taking any of the following actions on

3  account of such debt, claim, liability, interest or right:  (a) commencing or continuing in any

4  manner any action or other proceeding on account of such debt, claim, liability, interest or right

5  against the Debtor, the Revested Debtor, the Litigation Trust or property that is to be distributed

6  under this Plan, other than to enforce any right to a distribution with respect to such property

7  under the Plan; (b) enforcing, attaching, collecting or recovering in any manner any judgment,

8  award, decree, or order against the Debtor, the Revested Debtor, or any property to be distributed

9  to creditors under this Plan, other than as permitted under subparagraph (a) above; and (c)

10  creating, perfecting or enforcing any lien or encumbrance against any property to be distributed

11  under this Plan, other than as permitted by this Plan.

12        On and after the Effective Date, each holder of an Interest in the Debtor is

13  permanently enjoined from taking or participating in any action that would interfere or otherwise

14  hinder the Debtor from implementing this Plan or the Confirmation Order.

15        **L.    Exemption From Certain Transfer Taxes And Further Transactions.**

16        Pursuant to section 1146(c) of the Code, the issuance or exchange of any security,

17  or the making or delivery of any instrument of transfer under, in furtherance, or in connection

18  with the Plan, including, but not limited to, any deeds, bills of sale, assignments or other

19  instruments of transfer, shall not be subject to any stamp tax, real estate transfer tax or similar

20  tax.

21        **M.    Corporate Action.**

22        The liquidation of the Debtor/Revested Debtor, dissolution of the

23  Debtor/Revested Debtor, cancellation of the Interests, and the other matters provided for under

24  the Plan involving the corporate structure of the Debtor / Revested Debtor or corporate action to

25  be taken by or required of the Debtor / Revested Debtor shall be deemed to have occurred and be

26  effective as provided herein and shall be authorized and approved in all respects, without any

27  requirement of further action by stockholders or directors of the Debtor / Revested Debtor.  The

28  Debtor, Debtor in Possession and Revested Debtor shall each be authorized to execute, deliver,

file or record any instruments, applications and documents and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan.

**N.    Retention Of Jurisdiction.**

Following confirmation of this Plan, the Bankruptcy Court shall retain such jurisdiction as is legally permissible after confirmation, including, without limitation, for the following purposes:

1.    To determine the allowability, amount, classification, or priority of Claims upon objection by the Debtor, the Revested Debtor or the Post-Effective Date Board of Directors;

2.    To construe and to take any action to execute and enforce this Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance, and consummation of this Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Case on or before the Effective Date;

3.    To rule on any and all applications for allowance of compensation and expense reimbursement of professionals for periods on or before the Effective Date;

4.    To rule on any request for payment of any Administrative Claim or administrative expense;

5.    To resolve any dispute regarding the implementation, execution, performance, consummation, or interpretation of this Plan;

6.    To resolve all applications, adversary proceedings, contested matters, and other litigated matters instituted on or before the Effective Date;

7.    To hear and determine any actions related to the Recovery Rights, including Recovery Rights Against Insiders, whether or not such actions are pending on the Effective Date;

8.    To determine such other matters and to perform other functions as may be provided in the Confirmation Order;

9.    To modify this Plan under section 1127 of the Bankruptcy Code, to remedy any apparent nonmaterial defect or omission in this Plan, or to reconcile any nonmaterial inconsistency in the Plan so as to carry out its intent and purposes, subject to consultation with the Committee and the provision of notice and opportunity for a hearing regarding any such modification;

10.    To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with this Plan or its execution or implementation by any entity;

11.    To issue such orders in aid of execution of the Plan and the Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any entity, to the full extent authorized by the Bankruptcy Code;

12.    To designate, if necessary, pursuant to Bankruptcy Rule 9001(5), an individual to act on behalf of the Debtor or the Revested Debtor after the Effective Date; and

13.    To enter a final decree closing the Case.

**O.    Successors And Assigns.**

The rights, benefits and obligations of any entity named or referred to in this Plan are binding on, and will inure to the benefit of, any permitted heirs, executors, administrators, successors or assigns of such entity.

**P.    Modification of the Plan.**

The Debtor reserves the right, in accordance with the Code, to amend or modify the Plan prior to the Entry of the Confirmation Order, subject to consultation with the Committee and the provision of notice and opportunity for a hearing regarding any such modification. After the Entry of the Confirmation Order, the Revested Debtor may, upon order of the Court, amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan, subject to consultation with the Committee and the provision of notice and opportunity for a hearing regarding any such modification.

544016v6

As noted in the Introduction, Article I above, this Plan contemplated the liquidation of all of the Debtor's assets and the termination of the Debtor's business operations. However, the Debtor is seeking to employ KPMG Corporate Finance, LLC ("KPMG") to provide investment banking services to the Debtor and, in particular, to attempt to develop, with the Debtor, a business restructuring plan which, in all likelihood, would involve the participation of a third-party investor. As of this date, the Court has not yet approved the employment of KPMG and, accordingly, KPMG has not begun rendering services. Nevertheless, the Debtor is reserving its right to amend this Plan to provide an alternative to liquidation, in the event that, through the services to be provided by KPMG, or otherwise, the Debtor is in a position to propose a feasible Plan that would involve continued and future business operations.

**Q.     Objections to Claims.**

1.     The Revested Debtor shall be responsible for, subject to consultation with, and the prior approval of, the Post-Effective Date Board of Directors, commencing, prosecuting or settling objections to Claims, including Administrative Claims and Administrative Expenses, not concluded as of the Effective Date. All objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of such Claims by the later of (a) 120 days after the Effective Date, or (b) 120 days after the particular proof of claim has been filed, except as extended by an agreement between the claimant and the Revested Debtor, or by order of the Bankruptcy Court upon a motion filed by the Revested Debtor, with notice of such motion to be served upon the Office of the United States Trustee, the Post-Effective Date Board of Directors, Post-Effective Date Committee and those holders of Claims to whom the objection is made. If an objection has not been filed to a proof of claim that relates to a Claim by the objection bar dates established in this Section, the Claim to which the proof of claim relates shall be treated as an Allowed Claim for purposes of distribution under the Plan.

2.     The Post-Effective Date Committee shall have the authority to object to any Claims or actions asserted by any Insider or which is asserted against both the Debtor and any affiliate of the Debtor.

**R.    Limitation of Liability.**

Neither the Debtor/Revested Debtor, or any of its respective employees, officers, directors, partners, agents, representatives, or any professional persons employed by any of them, nor the Committee, the Post-Effective Date Board of Directors, the Post-Effective Date Committee or any of their respective members, agents, representatives, attorneys, accountants, auditors or other advisors, shall have or shall incur any liability to any Person or entity for any act taken or omission made in good faith in connection with or related to the post-petition administration of the Debtor's case, including, but not limited to, the formulation, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created in connection with the Plan or regarding any distribution made under the Plan.

Pursuant to section 1125(e) of the Bankruptcy Code, the Debtor, the Committee and its present and former members, officers, directors, employees, agents, advisors, representatives, successors or assigns, and any Professionals (acting in such capacity) employed by any of the foregoing entities will neither have nor incur any liability for their role in soliciting acceptance or rejection of the Plan.

**S.    Indemnification.**

After the Effective Date, the Estate shall indemnify the Revested Debtor and the members of the Post-Effective Date Board of Directors and Post-Effective Date Committee against any and all Claims, causes of action, losses, costs, damages, attorneys' fees and other expenses, each may sustain in carrying out their respective duties and obligations hereunder except those which arise as a result of gross negligence, fraud, breach of fiduciary duty or willful misconduct.

**T.    Cramdown.**

Notwithstanding anything to the contrary contained herein, the Debtor reserves the right to seek confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code in the event any impaired Class of Claims or Interests does not vote to accept the Plan.

# ARTICLE VI

## MISCELLANEOUS

**A.     Governing Law.**  Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by the laws of the State of California.

**B.     Provisions Severable.**  Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

**C.     Headings Do Not Control.**  In interpreting this Plan, the headings of individual sections are provided for convenience only, and are not intended to control over the text of any section.  The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the provisions of the Plan

**D.     Post-Confirmation Status Report.**  Within 120 days of the Entry of the Confirmation Order, the Revested Debtor shall file a status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the Post-Effective Date Committee, and those parties who have requested post-confirmation notice as provided for herein in sub-section F below.  Further status reports shall be filed every 120 days and served on the same entities.

**E.     Fractional Dollars.**  Any other provision of the Plan notwithstanding, no payments of fractions of dollars will be made to any holder of an Allowed Claim.  Whenever any payment of a fraction of a dollar to any holder of an Allowed Claim would otherwise be called for, the actual payment will reflect a rounding of such fraction up or down to the nearest whole dollar.

**F.     Payment Dates.**  Whenever any payment to be made under the Plan is due on a day other than a Business Day, such payment will instead be made, without interest, on the next Business Day.

**G.      Post-Confirmation Notices or Requests.**  From and after the Effective Date, any Person who desires notice of any pleading or document filed in the Bankruptcy Court, or any hearing in the Bankruptcy Court, or other matter as to which the Code requires notice to be provided, shall file a request for post-confirmation notice and shall serve the request on the Revested Debtor through its counsel, Gary E. Klausner, Stutman, Treister & Glatt Professional Corporation, 1901 Avenue of the Stars, 12th Floor, Los Angeles, California 90067.

**ARTICLE VII**

**CONFIRMATION REQUEST**

The Debtor requests confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

DATED:  October 4, 2010                                        Respectfully submitted,

Imperial Capital Bancorp, Inc.
Debtor and Debtor In Possession

By:
Joseph W. Kiley
Chief Executive Officer

Submitted by:

Stutman, Treister & Glatt,
Professional Corporation

By:      /s/ Gary E. Klausner
      Gary E. Klausner, Esq.
      Reorganization Counsel
      to Debtor and Debtor in Possession

544016v6                                        26

EXHIBIT "B"

[To be submitted on approval of Disclosure Statement]

EXHIBIT "C"

544465v.1

4:05 PM

09/17/10

Accrual Basis

# Imperial Capital Bancorp, Inc.
# Balance Sheet
### As of August 31, 2010

|  | Aug 31, 10 | Jul 31, 10 | $ Change |
|---|---|---|---|
| **ASSETS** | | | |
| **Current Assets** | | | |
| **Checking/Savings** | | | |
| 1002000 · PETTY CASH | 250.00 | 250.00 | 0.00 |
| 1005100 · BOFA - DIP GENERAL | 127,656.88 | 127,943.21 | -286.33 |
| 1006100 · TORREY PINES BK - DIP GENERAL | 176,020.03 | 576,932.06 | -400,912.03 |
| 1006200 · TORREY PINES BK - DIP PAYROLL | 406.46 | 406.46 | 0.00 |
| 1006300 · TORREY PINES BK - DIP MONEY MKT | 4,993,847.10 | 4,989,689.63 | 4,157.47 |
| 1006400 · TORREY PINES BK - MM RABBI TR | 1,990,837.19 | 0.00 | 1,990,837.19 |
| 1010000 · ICB BK ACCT - MAIN | -625.59 | -625.59 | 0.00 |
| 1010900 · ICB - UNAUTHORIZED TRANSACTIONS | 47,910.98 | 47,910.98 | 0.00 |
| **Total Checking/Savings** | 7,336,303.05 | 5,742,506.75 | 1,593,796.30 |
| **Other Current Assets** | | | |
| 1109200 · COMMON STOCK - AVAIL FOR SALE | 96,292.00 | 109,023.00 | -12,731.00 |
| 1109300 · RESIDUAL INTEREST-SECURITIZED | 367,747.26 | 381,583.79 | -13,836.53 |
| 1200300 · INVST IN SUB-ITLA MTG LN SEC | 75,000.00 | 75,000.00 | 0.00 |
| **Total Other Current Assets** | 539,039.26 | 565,606.79 | -26,567.53 |
| **Total Current Assets** | 7,875,342.31 | 6,308,113.54 | 1,567,228.77 |
| **Fixed Assets** | | | |
| 1520000 · COMPUTER EQUIPMENT | 185,143.43 | 185,143.43 | 0.00 |
| 1520100 · COMPUTER SOFTWARE | 18,875.00 | 18,875.00 | 0.00 |
| 1521000 · OFFICE EQUIPMENT | 212,228.31 | 212,228.31 | 0.00 |
| 1522000 · FURN & FIX. CAPITAL EXEC. | 386,032.90 | 386,032.90 | 0.00 |
| 1523000 · SIGNS | 2,639.99 | 2,639.99 | 0.00 |
| 1524000 · LEASEHOLD IMPROVEMENTS | 263,333.51 | 263,333.51 | 0.00 |
| 1525000 · AUTOS /EXECUTIVE | 67,325.24 | 67,325.24 | 0.00 |
| 1531500 · ACCUM DEPREC COMPUTER EQUIPMEN | -169,049.73 | -169,049.73 | 0.00 |
| 1531600 · ACCUM DEPREC COMPUTER SOFTWARE | -18,875.00 | -18,875.00 | 0.00 |
| 1531800 · ACCUM DEPREC OFFICE EQUIPMENT | -206,044.65 | -206,044.65 | 0.00 |
| 1532000 · ACCUM DEPREC FURNITURE & FIXT | -364,514.88 | -364,514.88 | 0.00 |
| 1533000 · ACCUM DEPREC SIGNS | -2,639.99 | -2,639.99 | 0.00 |
| 1534000 · ACCUM DEPREC LEASEHOLD IMPROVE | -263,333.51 | -263,333.51 | 0.00 |
| 1535000 · ACCUM DEPREC AUTOS | -43,050.24 | -43,050.24 | 0.00 |
| **Total Fixed Assets** | 68,070.38 | 68,070.38 | 0.00 |
| **Other Assets** | | | |
| 1488000 · ACCRUED INTEREST - TRUST I | 0.00 | 59,029.80 | -59,029.80 |
| 1488010 · ACCRUED INTEREST - TRUST II | 0.00 | 62,709.60 | -62,709.60 |
| 1488020 · ACCRUED INTEREST - TRUST III | 0.00 | 39,840.86 | -39,840.86 |
| 1488030 · ACCRUED INTEREST - TRUST IV | 0.00 | 16,245.61 | -16,245.61 |
| 1488040 · ACCRUED INTEREST - TRUST V | 0.00 | 31,977.91 | -31,977.91 |
| 1500000 · CURR FED TAX PAY | 29,297,406.00 | 29,297,406.00 | 0.00 |
| 1503000 · CURR TAX PAY - DELAWARE | 99,945.00 | 99,945.00 | 0.00 |
| 1600000 · PREPAID GENERAL, NET | 74,435.33 | -867,933.97 | 942,369.30 |
| 1601000 · PREPAID INSURANCE | 32,566.99 | 48,975.51 | -16,408.52 |
| 1620000 · DEPOSITS - RENT | 30,971.51 | 30,971.51 | 0.00 |
| 1628000 · TRUST ASSETS DEFERRED COMP | 22,051.93 | 2,009,551.62 | -1,987,499.69 |
| 1628500 · SERP ASSETS | -0.54 | 2,601.01 | -2,601.55 |
| 1635000 · A/R MISC. | 13,860.77 | 13,860.77 | 0.00 |
| 1639000 · A/R MASS MUTAL-401K | 35,167.39 | 35,167.39 | 0.00 |
| 1639100 · AR -CASH SURRENDER VALUE -LIFE | 4,537,633.91 | 4,706,898.14 | -169,264.23 |
| 1639200 · SPLIT DOLLAR LIFE RECEIVABLE | 441,240.00 | 441,240.00 | 0.00 |
| **Total Other Assets** | 34,585,278.29 | 36,028,486.76 | -1,443,208.47 |
| **TOTAL ASSETS** | 42,528,690.98 | 42,404,670.68 | 124,020.30 |

**CERTIFICATE OF SERVICE**

I, Danielle S. Trujillo, am over the age of 18 years and not a party to the within action. I am employed in an office that employs a member of the bar of this court, at whose direction the within service was made. My business address is Stutman, Treister, & Glatt Professional Corporation, 1901 Avenue of the Stars, 12th Floor, Los Angeles, California 90067-6013.

On October 4, 2010, I served the foregoing pleading:

**DISCLOSURE STATEMENT RE CHAPTER 11 LIQUIDATING PLAN OF REORGANIZATION FOR DEBTOR IMPERIAL CAPITAL BANCORP, INC., A DELAWARE CORPORATION DATED OCTOBER 4, 2010**

on the interested parties in this action by placing true copies thereof, enclosed in sealed envelopes, with first class postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as follows:

*See Service List Attached Hereto and Incorporated Herein by Reference*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 4, 2010, at Los Angeles, California.

*/s/ Danielle S. Trujillo*
Danielle S. Trujillo

544464v.1

1

# SERVICE LIST

2

Imperial Capital Bank
Special Notice List
Doc No. 534752 Rev. 10/04/10

3

4

Imperial Capital Bancorp
Attn: Joseph W. Kiley, III, CEO
PO Box 2283
La Jolla, CA 92037-2283

Imperial Capital Bancorp
Attn: Anthony Rusnak, Esq.
PO Box 2283
La Jolla, CA 92037-2283

United States Trustee
David A. Ortiz, Esq.
United States Department of Justice
402 West Broadway, Suite 600
San Diego, CA 92101

5

6

7

Counsel to Bank of New York Mellon:
Pillsbury Winthrop Shaw Pittman LLP
Margot P. Erlich/Leo Crowley
1540 Broadway
New York, NY 10036-4039

Committee Member:
US Bank as Trustee for
ITLA Capital Statutory Trust(s) I, II, V,
Attn: James H. Byrnes
One Federal Street, 3rd Floor
Boston, MA 02110

United States Department of Justice Tax
Division
Civil Trial Section, Western Division
PO Box 683, Ben Franklin Station
Washington, DC 20044

8

9

10

Securities & Exchange Commission
Attn: Sara D. Moyed
5670 Wilshire Blvd., Suite 1100
Los Angeles, CA 90036

Federal Deposit Insurance Corporation
25 Jessie Street at Ecker Square,
Suite 2300
San Francisco, CA 94105

Dept of Financial Institutions
7575 Metropolitan Drive, Suite 108
San Diego, CA 92108

11

12

13

Committee Member:
Bank of New York Mellon as Indenture
Trustee
Attn: Martin Feig
101 Barclay Street, 8 West
New York, NY 10286

Committee Member:
888 Prospect LJ, LLC
Attn: Mercedes Juarez
Cushman & Wakefield of SD
4435 Eastgate Mall, Suite 200
San Diego, CA 92121

Brian Benson
357 S. Curson Ave., #11-C
Los Angeles, CA 90036

14

15

16

David Hunt
4087 Caminito Suero
San Diego, CA 92122

Timothy M. Doyle
2617 Sutter Street
Carlsbad, CA 92010

David Muchnikoff
Silver Freedman & Taff LLP
3299 K Street NW, Suite 100
Washington, DC 20007

17

18

19

Jeffrey A. Berman
Sidley & Austin LLP
555 W. Fifth Street, 40th Floor
Los Angeles, CA 90013

Scott Wallace
7879 Sitio Abeto Dr.
Carlsbad, CA 92309

American Express Travel Services, Inc.
4315 S. 2700 W
Salt Lake City, UT  84184

20

21

22

Charles E. Kohl
25662 Shaw Place
Stevenson Ranch, CA 91381

A Bullock
Squar, Milner, Peterson, Miranda
& Williamson, LLP
4100 Newport Place Drive, Third Floor
Newport Beach, CA 92660

Aila Pallera
KPMG
355 South Grand Avenue
Los Angeles, CA 90071-1568

23

24

25

Keith Lupton
Ernst & Young LLP
725 S. Figueroa Street
Los Angeles, CA 90017

Rosemary E. Lennon
1031-A Kenneth Road
Glendale, CA 91202

Thomas Hobbs
531 Avenida del Verdor
San Clemente, CA 92672

26

27

28

544464v.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Bloomberg, LP
6500 Wilshire Boulevard
Los Angeles, CA 90048

Grande Colonial Hotel La Jolla
910 Prospect Street
La Jolla, CA 92037

Counsel to Bloomberg Finance LP
Willkie Farr & Gallagher LLP
Attn: Carol R. Mascera/Shaunna D. Jones
787 Seventh Avenue
New York, NY 10019-6099

Request For Notice:
Counsel to 888 Prospect
Jerry D. Hemme
Goode, Hemme & Peterson
6256 Greenwich Dr. Suite 500
San Diego, CA 92122

Attys for Iron Mountain Info. Mngt, Inc.
Frank F. McGinn
Bartlett Hackett Feinberg P.C.
155 Federal St., 9th Fl.
Boston, MA 02110

Kevin Boyer, President
Boyer Moving & Storage
13691 Danielson Street, Suite D
Poway, CA 92064

Cynthia S. Reynolds
AVP/Dedicated Service Director
Bank of America
1655 Grant Street, Bldg. A, 10th Floor
Concord, CA 94520

Counsel to U.S. Bank National
Association
Marie C. Pollio
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103

Counsel to the Creditors' Committee:
David P. Simonds
Akin Gump Strauss Hauer & Feld LLP
2029 Century Park East, Suite 2400
Los Angeles, CA 90067

Jayne Lindberg
J A Lindberg Interiors
4079 Promontory Street
San Diego, CA 92109

Counsel to FDIC:
Jeffrey Isaacs
Procopio, Cory, Hargreaves & Savitch
LLP
530 B Street, Suite 2100
San Diego, CA 92101

Counsel to Bank of New York Mellon:
Pillsbury Winthrop Shaw Pittman LLP
Mark D. Houle, Esq.
650 Town Center Drive, Suite 700
Costa Mesa, CA 92626-7122

Gerald P. Kennedy
Procopio, Cory, Hargreaves & Savitch
LLP
530 B Street, Suite 2100
San Diego, CA 92101